■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. ROBERT LACY, Appellant.— STALEY, JR., J. Appeal from a judgment of the County Court of Rensselaer County rendered June 11, 1965, upon a verdict convicting the appellant of the crime of murder in the first degree. Appellant stands convicted of the murder of one William Zimmer, who was beaten to death in the early morning of October 14, 1964. On appeal to this court, it was held that, although the issue of voluntariness of the statement had been the subject of a *Huntley* hearing during the course of the trial, the issue of appellant's waiver of the right to counsel had not been thoroughly presented, and that issue was remanded to the County Court for a postconviction hearing. (*People* v. *Lacy,* 25 A D 2d 788.) The record at the postconviction hearing reveals the following facts: The appellant Lacy was arrested on October 14, 1964 at his home about 2:10 P.M. by three officers of the Troy Police Department (Bloomer, Murray and Iler). He entered a police patrol car and, in response to a question, told the police that he had spent the prior night sleeping in an automobile behind the R. P. I. Field House. The officers proceeded to the Field House to locate the automobile, and found that there was no automobile, and the appellant thereupon stated that there was no automobile and that he had lied. The police then drove to a police call box, and called August Rokjer, the Chief of Detectives, who directed them to take the appellant to the Grand Jury room in the Rensselaer County Court House. They arrived at the courthouse shortly before 3 o'clock, and the three officers, with the appellant, entered the Grand Jury room where they were joined by the Chief of Detectives, and a representative of the District Attorney's office. The chief, according to Bloomer, asked the appellant if he wanted to call a lawyer, and the appellant said he did not want any lawyer. The chief then asked him if he would feel better if he made a statement. The appellant stated that he wanted to make a statement. The appellant had previously been advised that he had been arrested under a warrant for murder in the first degree. He thereupon answered questions asked by the chief, which answers were recorded in the form of a statement which he signed, after swearing before a Commissioner of Deeds under oath that the statement was true. The statement consisted of five pages. The first four pages were signed by the appellant; two officers as witnesses, and also by the Commissioner of Deeds. The fifth page was signed only by the appellant and one of the officers and stated the following: "I, Robert E. Lacey, have been advised that I can have a lawyer and also that any statement that I make can

be used against me. I was also advised that I did not have to make a statement, but I felt that I should make one." Except for the fifth page, there was not included in the statement any reference to the alleged questions of the chief to the appellant relative to representation by counsel or willingness to make a statement. The psychiatrist who testified at the hearing, characterized the appellant as a mentally retarded person of subnormal intelligence, an illiterate and a moron, and that his mental age was approximately three years behind his chronological age. He testified that the appellant was capable of some type of work and had an awareness of where he was; and, that in his opinion, the appellant was not in such a state of mental retardation that he would not be able to understand a question that he was entitled to be represented by an attorney. The appellant was not threatened with bodily harm and no promises were made to him. The written statement was read to him, and he read it aloud before he signed it. The statement was completed and signed at 4:52 p.m. on October 14, 1964. The original trial record further reveals that, at the time of his arrest at the home of Lucy Mae Hill, the appellant said to her, "Ma, will you get me a lawyer?" Mrs. Hill talked to one Stephen Smith, who was present, and he thereafter contacted F. Warren Travers, an attorney. Mr. Travers met Mr. Smith at the Troy Police Station at about 2:30 p.m. He talked to Detective Hickey and asked to see the appellant. He was told that the appellant was not there. Detective Hickey confirmed that he talked to Mr. Travers between 2:30 p.m. and 3:00 p.m. on October 14; that he knew him to be an attorney, and that he had come to see the appellant; and, that Mr. Travers had asked him to call him at his office if the police brought the appellant in. The record also indicates that, prior to Mr. Travers' appearance at the police station, the Detective Bureau had been advised by Chief of Detectives Rokjer, that he was meeting the other officers and the appellant Lacey at the Grand Jury room. The appellant thus made a statement involving him in the crime while being interrogated by the police after an attorney had appeared and requested to see him at the place where he would normally be immediately after his arrest. Such confession thereby became incompetent and inadmissible, unless the appellant made a knowledgeable waiver. (*People* v. *Gunner*, 15 N Y 2d 226; *People* v. *Sanchez*, 15 N Y 2d 387; *People* v. *Ressler*, 17 N Y 2d 174.) Any question concerning the voluntariness of a waiver must be resolved beyond a reasonable doubt against a defendant before the confession may be admitted in evidence. Although an accused, in the custody of the police, may waive his right to counsel, it must be knowingly done. (*People* v. *Bodie*, 16 N Y 2d 275.) In the *Bodie* case, it was pointed out that the defendant there involved was not an ignorant defendant who also had a prior conviction. In view of the appellant's age (he was 18 at the time of the arrest), his mental capacity, and the failure to disclose to him that an attorney had inquired about him, any finding is precluded that the waiver was voluntary and informed, and competently and intelligently made. (*People* v. *Witenski*, 15 N Y 2d 392.) Had the appellant been advised that an attorney had appeared to represent him, pursuant to his request at the time of arrest, he may well have chosen to remain silent until counsel had an opportunity to advise him. Without this information, and under the circumstances, it cannot be held that he made a voluntary and informed waiver of his right to counsel. Judgment reversed, on the law and the facts, and a new trial ordered. Gibson, P. J., Herlihy and Reynolds, JJ., concur; Aulisi, J., not voting.