STATE of Missouri, Plaintiff-Respondent,

v.

Larry WHITE, Defendant-Appellant.

No. 34897.

Missouri Court of Appeals,
St. Louis District,
Division One.

April 24, 1973.

Shaw & Howlett, Clifford Schwartz, Clayton, for defendant-appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Jefferson City, Gene McNary, Pros. Atty., George Westfall, Asst. Pros. Atty., Clayton, for plaintiff-respondent.

McMILLIAN, Judge.

Defendant, age 15, was taken into custody on 21 July 1971, and on 30 July 1971 was brought before the Juvenile Court for a transfer hearing, pursuant to § 211.071, RSMo 1969, V.A.M.S. It was alleged that he was not a proper subject to be handled under the Juvenile Code because he forcibly broke and entered into the dwelling house of another, and thereafter committed a violent assault upon the resident with the intent to rob and do great bodily harm. At the waiver hearing he was represented by the same attorney who represented him in the Circuit Court and this court on this appeal. Although his mother was present at the hearing, neither she nor his attorneys were notified or present for the video taped statement taken on 31 July 1971 after the dismissal of the petition before the Juvenile Court.

Having been granted the permission to prosecute, the prosecutor obtained an indictment on 20 August 1971. However, on 21 March 1972 an information on which the case was tried, was substituted for the indictment. Defendant was found not guilty of the assault charge, but guilty of the burglary charge and thereafter sentenced by the court, in accordance with the jury's verdict, to serve 5 years in the custody of the Department of Corrections.

Defendant raises three points on this appeal: (1) the admission into evidence of a color photograph of the assault victim; (2) the refusal to give defendant's instructions on his theory of the case; and (3) the reception into evidence of a video taped statement made by the defendant.

On 20 July 1971 at approximately 11:00 P.M., two young men forcibly broke a screen and gained entrance through the open window into the home of Bertha Moxley, a 91 year old widow living on Nixon Avenue in St. Louis County, Missouri. Because of infirmities of age, Mrs. Moxley, other than being awakened and telling the two men to leave, which they

did immediately, had a very vague recollection as to what had happened.

Learning that a box of Kleenex was missing from the Moxley home, a police officer on the same night recovered a box of Kleenex about one hundred yards from the victim's home. In addition to the fingerprints obtained from the Kleenex box, prints were also obtained from the windowsill and from a clock found near the kitchen door. On 31 July 1971, defendant's fingerprints and a palm print were taken. All prints matched with those from the Kleenex box and those from the windowsill and clock. Having a positive match-up with defendant's fingerprints, the officer advised defendant of his constitutional rights and explained to him the nature of the video tape recording process. Then, defendant, in answer to the officer's inquiry about wishing to make a statement on the video tape, answered "yes." On cross-examination the officer said that the reason he did not call defendant's mother was because he did not know defendant lived with her until he learned about it during the questioning.

Testifying in his own behalf, defendant admitted his presence in the Moxley home, but maintained that he remained in the kitchen. And as soon as his companion saw Mrs. Moxley in the bed, both fled. On cross-examination defendant said that the officer told him he could neither have an attorney during the taking of the video tape statement nor should he ask for one. He further said that the officer threatened "to beat my butt with a stick." In rebuttal the State showed that defendant as early as 21 July 1971 admitted to a Pagedale officer, after being informed of his constitutional rights, that he and one Mitchell had beaten the old lady in bed and had knocked her to the floor. Although the defendant's mother was present, according to the officer, she was not in the room at the time of the interview; neither was it shown that any juvenile officer, of the Juvenile Division of the Court, nor a person acting for the juvenile officer was present, pursuant to § 211.061(1), RSMo 1969.[1]

Mrs. White, defendant's mother, testified that on 21 July 1971, she telephoned the Pagedale Police Department and asked if her son was there. But that they refused to tell her. On the next day she said she called the County Juvenile Center and learned that her son was there. She further testified that they told her that she could see her son and she went right over. However, according to her, she did not see him that day, but three days later. Other evidence will be given, if needed, during the course of the opinion.

We find defendant's first contention that the colored photograph of Mrs. Moxley was inflammatory and prejudicial and to be without merit. In State v. Morris, 248 S.W.2d 847 (Mo.1952), cited with approval in State v. Tyson, 363 Mo. 1242, 258 S.W.2d 651, l. c. 654, our Supreme Court said:

> " . . . 'it is true that if the exhibition of gruesome photographs to the jury would serve no useful purpose in proving the crime, the trial court in the exercise of a sound discretion may exclude them' . . . "

The test is whether such photographs have a logical tendency to connect the accused with the crime, or to prove the identity of the victim, if dead, or show the nature of the wound, or throw any light upon any relevant or material matter. Moreover, in State v. Tyson, supra, the court said that it was not a valid objection that witnesses may have testified to the same matters as shown by the picture. Because a picture gives to the jury a much clearer impression of many things that would be difficult to portray by an oral description. Finally, in State v. Thresher, 350 S.W.2d 1, 7 (Mo. 1961), the court said:

> " . . . Even if the pictures were inflammatory and gruesome, as contended,

1. All statutory references, unless otherwise specified, are to RSMo 1969.

it is not a sufficient cause for their rejection that the sight of them would tend to agitate the feelings of the jurors, if the exhibits satisfy the rule as to the admission of demonstrative evidence . . ."

Measured by these standards since defendant was charged with a felonious assault, we find no abuse of discretion on the part of the trial judge in the reception into evidence of the colored photograph. Here, defendant was charged with wilfully and maliciously assaulting Mrs. Moxley. The picture not only displayed the extent of injuries, but also vividly showed the viciousness of the attack; both were material under the pleadings. See also State v. Schaffer, 354 S.W.2d 829 (Mo.1962) and 53 A. L.R.2d 1102.

■ We have painstakingly examined the instruction given by the Court; namely, the verdict director for burglary in the first degree; and the instruction pertaining to the guilt, if any, of aiders and abettors. We find no case cited by the defendant is authority that either instruction was erroneous. We also note that the language used in the aider and abettor instruction is identical to the language used in State v. Garton, 371 S.W.2d 283 (Mo.1963) and State v. Bolden, 473 S.W.2d 355 (Mo. 1971). Moreover, the Court's instruction covered the same issue as presented in defendant's refused instruction without the argumentation contained in the rejected instructions. Accordingly, we rule this point against defendant.

■ Finally, we take up defendant's claim of error pertaining to his video taped statement. The State first cites State v. Lusk, 452 S.W.2d 219 (Mo.1970) for the proposition that a video taped admission could be used as evidence. We accept this. Secondly, the State joins issue with defendant, and it too cites Gallegos v. Colorado, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962). In the Gallegos case, a 14 year old boy was detained for five days ". . . during which time the boy's mother unsuc-

cessfully tried to see him and he was cut off from contact with any *lawyer* or *adult advisor* . . ." before confessing to a murder. (Emphasis added.) The Supreme Court stated that "There is no guide to the decision of cases such as this, except the totality of circumstances . . ." Some of the circumstances to be considered are (1) age (dividing line seems to be between 14 and 15; (2) mental age; (3) previous court experience; (4) advisement or presence of parents; (5) physical conditions; (6) held incommunicado; (7) education; (8) method of interrogation; and (9) the violation of a statute or court rule. Since the Court chose not to have the video taped statement reported stenographically, we have only the benefit of the court's conclusion that the defendant "knowingly, very calmly and very considerately volunteered and voluntarily waived his rights with full knowledge of his rights."

■ We quarrel with neither Cotton v. United States, 446 F.2d 107 (8th Cir., 1971) nor State v. Sinderson, 455 S.W.2d 486 (Mo.1970), which holds that a juvenile can effectively waive constitutional rights. In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) left open the possibility that a juvenile might waive his constitutional rights, citing Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); United States ex rel. Brown v. Fay, 242 F.Supp. 273 (S.D.N.Y.1965). The *Johnson* case is the origin of the waiver standard, while the *Fay* case was concerned with the judicial procedure waiver. So, it is not surprising that lower courts since have uniformly held that the condition of infancy, by itself, is not sufficient to invalidate an otherwise competent waiver of constitutional rights. West v. United States, 399 F.2d 467 (5th Cir., 1968) and People v. Lara, 67 Cal.2d 365, 62 Cal. Rptr. 586, 432 P.2d 202 (1967).

However, the *Sinderson* case is distinguishable on its facts from our case under consideration. Sinderson, age 14, was convicted of robbery in the first degree after the Juvenile Court had waived jurisdiction

thus permitting him to be prosecuted under the general law pursuant to § 211.071. The Supreme Court held that where the mother and uncle of a 14 year old defendant were with him when his constitutional rights were explained when he decided to talk to officers without counsel being present, and where mother and uncle remained at the police station during interrogation, and subsequently all were present when the statement was read, corrected, and signed by defendant, under "totality of circumstances" no constitutional rights of the defendant were violated.

■ Our review of the "totality of circumstances" leads to this result: (1) we have a 15 year old child; (2) the record is silent as to his mental age, physical condition and education; (3) a child who has had extensive previous juvenile court experiences; and (4) a child questioned by an experienced police officer, without the knowledge or presence of either his mother, attorney, or any other supportive adult. Even under the "totality of circumstances" rule, in our opinion, where a lawyer or his mother or friend could have given the defendant the protection which his own immaturity could not, we hold that without some adult protection against this inequality, even when advised he cannot make the kind of judgment to intelligently, knowingly, and understandingly waive his constitutional rights.

But, moreover, there is another ground for invalidating defendant's video taped statement which we deem to be far more fundamental. The procedure followed in this case strikes at the heart of our adversary system and effectively waters down and makes hollow the Sixth Amendment right to counsel. In Coughlan v. United States, 391 F.2d 371 (9th Cir., 1968), officers questioned a prisoner they knew to be represented by court-appointed counsel without notifying his lawyer of their purpose. After being given the Miranda warnings, including the right to have his lawyer present, defendant waived these rights and made incriminating statements. A 2–1 majority, Per Curiam, rejected the argument that any statement obtained by an officer from a person represented by counsel when counsel was not timely advised of the proposed interview violates the right to counsel. Although the conviction was affirmed the court was very careful not to approve the police practice:

" . . . The better, fairer and safer practice is to afford the defendant's attorney reasonable opportunity to be present. When this is done the heavy burden of proving a waiver of constitutionally protected rights is immeasurably eased."

The *Coughlan* case was sharply criticised in Recent Developments, 1968 Duke L.J. 816, 821:

" . . . Instead of requiring investigatory bodies to cooperate with defense counsel in the hope of forging a viable, pretrial role for counsel . . . the Ninth Circuit has suggested that governments may avoid the dampening effect of defense counsel by dealing directly with the defendant. The Miranda Court sought to eliminate disparate judicial treatment of the informed and the naive by providing all suspects with a comprehensive warning of the sixth amendment right to counsel at the critical investigatory stage . . . Indeed, the identical factors, such as nervousness, lack of comprehension as to the need for exercising the right, and psychological pressure, which induce a suspect to incriminate himself, despite a warning of the right to remain silent, could act to convince an accused to waive his right to the presence of counsel already engaged. Knowing this, police might be persuaded to repeatedly isolate a defendant prior to trial, using clandestine custodial interrogations to elicit the desired inculpatory statement. Should that practice occur, the buffer between the state and the individual which counsel is designed to provide is eliminated; and the impressionable, the ignorant, and the uninitiated would again be subjected to unequal judicial treatment . . . "

See also the dicta in Mathies v. United States, 126 U.S.App.D.C. 98, 374 F.2d 312, 316 n. 3 (1967), "The prospective application of Miranda . . . plainly will require that such interviews (with those who have already engaged counsel) can be conducted only after counsel has been given an opportunity to be present"; United States v. Smith, 379 F.2d 628, 633 (7th Cir., 1967) ". . . the Miranda rule applies . . . to preclude as unconstitutional the admission of statements resulting from in-custody interrogation after known retainer or appointment of counsel and without counsel's presence or approval, . . . ."

 While the Coughlan, Mathies, and Smith cases, supra, dealt with adults, here we have a 15 year old defendant, who only the day before the Juvenile Court had authorized the prosecuting authorities to proceed, if so advised, in the adult court. Even a cursory investigation would have informed the officer, who had at least 13 years of experience with law enforcement (9 years with the St. Louis Police Department and 4 years with the St. Louis County Police Department), that the youth had a mother with whom he lived, and that his mother had retained counsel for her son. While we recognize that at the time the defendant was interrogated the process had not reached the Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) "defendant stage," i. e., no information or indictment was pending, still the police knew that they were dealing with a youthful 15 year old child, who stood alone, without the benefit of his mother, a friend, and without counsel. At this critical juncture only the skilled hand of counsel could have safely advised him of the pending dangers to be confronted. Canon 9 of the Canons of Professional Ethics provides that a lawyer should not communicate with a party represented by counsel. While this Canon does not purport to govern the conduct of non-lawyers, such as police officers, it does place a responsibility upon prosecuting attorneys not to sanction, or take advantage of statements obtained from local or state police officers from a person represented by counsel, in the absence of counsel.

We hold today only that where a child of tender age has parents and an attorney, and that child is in the custody of the police or other law enforcement agencies, that prior to any in-custody interrogation the police or other law enforcement officer shall make a reasonable effort to notify and to have present both his parents and attorney. Or, otherwise, any statement obtained without either the parent, attorney or an adult friend will be excluded. To hold otherwise would defeat the high purpose to be served by the Sixth Amendment and would contravene the basic dictates of fairness in the conduct of criminal causes and the fundamental rights of persons charged with crime.

Accordingly, judgment reversed and cause remanded for a new trial in accordance with this opinion.

WEIER, P. J., and CLEMENS, J., concur.