STATE of Missouri, Respondent,

v.

Waddell McCONNELL, Appellant.

No. KCD 27756.

Missouri Court of Appeals,
Kansas City District.

Oct. 6, 1975.

Motion for Rehearing and/or Transfer
Denied Nov. 3, 1975.

Thomas M. Larson, Public Defender, Robert A. Simons, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

Appeal from judgment of conviction and sentence to life imprisonment, entered on jury verdict finding Waddell McConnell guilty of murder in the first degree.

On February 8, 1974, Mr. Hugh Buss was found stabbed to death in his tailor shop in Kansas City. Sometime in March, Robert Land, in police custody on other charges, told police that he had gone with Waddell McConnell to Buss's shop and that McConnell had killed Buss after they had robbed him. McConnell was arrested and made a statement to police admitting his participation in the crime. The sole point of error on this appeal relates to the use of McConnell's statement over the objection that it was obtained in violation of his right to assistance of counsel.

In 1973, McConnell was charged with rape in Jackson County. Mr. Joseph H. Moore of the Kansas City Bar was appointed to represent McConnell. McConnell was sentenced on a plea of guilty to a lesser charge and, upon receiving credit for jail

time, was discharged shortly. Between that time and the time of his arrest for Buss's death, he had several brushes with law enforcement officers and he or his girl friend, Iva Hampton, was in touch with Moore from five to ten times in connection with such matters.

On Sunday, March 24, 1974, around noon, Mrs. Hampton called Moore and told him that McConnell was under arrest for a killing. Moore told her that he would call the police and find out what was going on and get in touch with her. At the hearing to suppress McConnell's statement, Moore stated: " * * * [A]ll the time since I had been appointed by the Court to represent Mr. McConnell, I considered myself his lawyer, and to the best of my knowledge he certainly considered me his lawyer, and I considered him my client."

Moore called Detective Linhart, of the Crimes Against Persons Unit, Kansas City Police Department, a personal friend who knew Moore was a criminal defense attorney. Linhart said he would have the officer in charge of the case call Moore. A short time later, Major Campbell of the Police Department called Moore and told him that McConnell was under arrest in the Buss killing. Campbell told Moore that he had some information in the case that didn't "ring true" and he wanted to give McConnell a lie detector test. After some hesitation, Moore told Campbell: "All right, Jim, go ahead and give him the polygraph. Tell him that you have talked to me and that I said it's okay to take the polygraph." Nothing further was said and Moore heard no more until the next day when he was told that McConnell had "flunked" the polygraph and "spilled his guts."

Except for Moore's statement, the record shows nothing about the administration of a polygraph test or its results.

Following the call to Moore, Mrs. Hampton went to police headquarters around 6:00 P.M. and was permitted to visit with McConnell. After a brief visit she told Sergeant Elmer Meyer, supervisor of the homicide section of the Crimes Against Persons Unit that McConnell wanted to talk to him. Sergeant Meyer said that he did not talk to prisoners and that he would call a detective to whom McConnell could talk. Mrs. Hampton said McConnell wanted to talk to him. Sergeant Meyer then went to the office where McConnell was and told him he would talk to him "if you honestly want to talk to me." McConnell said he did and the Sergeant thereupon read the Miranda warning to him. He asked McConnell if he understood the warning. McConnell said that he did and signed a copy of the warning which had been read to him. Sergeant Meyer asked McConnell about his education and McConnell said he had gone to the ninth grade.

The questioning began in the presence of Mrs. Hampton. When she left to get cigarettes for McConnell, Meyer told him:

" 'Now, if you really want to tell the truth about this matter and you don't want to withhold anything, let's tell the truth; otherwise, I am not going to spend any more time with you. Now, if you can tell me everything and make sure it's the truth, or let's just stop right here.' At this point he said, 'I want to tell you.' I said, 'Fine. We will get Mrs. Hampton back in here and she can be present all during this time.' "

When Mrs. Hampton returned, McConnell under Meyer's questioning related the details of the Buss killing. Meyer then asked McConnell whether he would put the statement in writing and when McConnell replied affirmatively, they went to a typist where a question and answer statement was reduced to writing. McConnell, according to Meyer, read the statement after it was typed and signed each page, acknowledging that he had done so. Mrs. Hampton also initialed each page of the statement.

The defendant moved to suppress his statements on the grounds that they were obtained in violation of his rights under the Fifth and Fourteenth Amendments of the United States Constitution and Article I, §§ 18(a) and 19 of the Constitution of Mis-

souri. The motion also alleged that use of the confession would violate Canon 9 of the Canons of Ethics, because the confession was obtained by the police when defendant was known by the Police Department to be represented by counsel.

After a hearing on the motion to suppress, at which Sergeant Meyer, Officer Linhart, Major Campbell, Mrs. Hampton and Mr. Moore testified, the court overruled the motion to suppress. Over objection at the trial, Sergeant Meyer testified to the oral statement McConnell made to him and the written statement was introduced in evidence.

Robert Land also testified on behalf of the state. He had been granted immunity from prosecution in return for his testimony.

The jury returned a verdict of guilty.

Appellant's point on this appeal is stated as follows:

"THE COURT ERRED IN FAILING TO SUSTAIN THE MOTION TO SUPPRESS APPELLANT'S ORAL AND WRITTEN CONFESSION BECAUSE IT WAS TAKEN WITHOUT BENEFIT OF COUNSEL AFTER COUNSEL HAD ENTERED THE CASE, CONTRARY TO APPELLANT'S RIGHTS AS GUARANTEED BY THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTION 18(a), AND SECTION 19, CONSTITUTION OF THE STATE OF MISSOURI."

(No reference to the Sixth Amendment to the United States Constitution appears in appellant's motion below, but because of the liberality now accorded raising such questions, it will be treated as having been properly raised.)

■ Appellant's basic position that the use of the confession was erroneous because taken without presence of counsel after counsel "entered" the case must be rejected. The argument here advanced was presented in *Moore v. Wolff*, 495 F.2d 35 (8th Circuit

1974). In disposing of the contention the court stated (495 F.2d 36–37):

" * * * Petitioner does not challenge that he received the *Miranda* warnings or voluntarily made the oral incriminating statements. His argument instead is that after the appointment of counsel no interrogation can take place without counsel being notified and given an opportunity to be present. Without notice and opportunity to be present it is argued that the accused cannot 'knowingly and intelligently' waive his Fifth Amendment privilege.

"We cannot agree. Although *Mathies v. United States*, 126 U.S.App.D.C. 98, 374 F.2d 312 (1967), contains a footnote by then Circuit Judge, now Chief Justice, Burger indicating his belief that *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) would require the presence of counsel at all interviews once an accused was represented, such has not been the unanimous view in the circuits squarely presented with the question. *United States v. Cobbs*, 481 F.2d 196 (3rd Cir.), cert. denied, 414 U.S. 980, 94 S.Ct. 298, 38 L.Ed.2d 224 (1973); *United States v. Thomas*, 474 F.2d 110 (10th Cir.), cert. denied, 412 U.S. 932, 93 S.Ct. 2758, 37 L.Ed.2d 160 (1973); *United States v. Springer*, 460 F.2d 1344 (7th Cir.), cert. denied, 409 U.S. 873, 93 S.Ct. 205, 34 L.Ed.2d 125 (1973); *Wilson v. United States*, 398 F.2d 331 (5th Cir. 1968), cert. denied, 393 U.S. 1069, 89 S.Ct. 727, 21 L.Ed.2d 712 (1969); *Coughlan v. United States*, 391 F.2d 371 (9th Cir.), cert. denied sub nom., *Coghlan v. United States*, 393 U.S. 870, 89 S.Ct. 159, 21 L.Ed.2d 139 (1968); cf. *United States v. Barone*, 467 F.2d 247 (2d Cir. 1972).

"[2] If an accused can voluntarily, knowingly, and intelligently waive his right to counsel before one has been appointed, there seems no compelling reason to hold that he may not voluntarily, knowingly, and intelligently waive his right to have counsel present at an interrogation after counsel has been appointed. Of course, the Government will have a heavy burden to show that

the waiver was knowingly and intelligently made. *Miranda v. Arizona, supra,* 384 U.S. at 475, 86 S.Ct. 1602, but we perceive no compelling reason to adopt the *per se* rule advocated by petitioner. In fact, *Miranda* expressly recognizes that such interrogation may continue without presence of counsel, though the burden of showing a knowing and intelligent waiver is a heavy one. Here, the facts establish beyond any doubt that the Government's burden was discharged and petitioner's waiver was voluntarily, knowingly and intelligently made."

That reasoning adequately answers appellant's contention here. Such conclusion is not inconsistent with the holding in *State v. White,* 494 S.W.2d 687 (Mo.App.1973), cited and relied upon by appellant. That case involved a 15-year-old juvenile who was represented by an attorney at a juvenile court waiver hearing. Neither the attorney nor the juvenile's mother was advised of the police interrogation the day following the waiver hearing, at which the juvenile made an incriminating statement. The court there held that there could not have been an intelligent waiver by the juvenile absent some adult protection against the unequal police authority there existing. The court concluded that, in the circumstances of that case, the interrogation should not have proceeded unless the law enforcement officers had made a reasonable effort to notify and have present his parents and attorney.

In this case, the appellant was 18 years of age at the time of his arrest. Therefore, the *White* decision dealing with a juvenile is distinguishable.

Cases from other jurisdictions, cited and relied upon by appellant, are also distinguishable. In *People v. Lacy,* 26 A.D.2d 982, 274 N.Y.S.2d 944 (1966), and *State v. Johns,* 185 Neb. 590, 177 N.W.2d 580 (1970), the defendant had made an unequivocal request for an attorney before being questioned. In *Commonwealth v. McKenna,* 355 Mass. 313, 244 N.E.2d 560 (1969), the attorney had specifically requested to be present at any interrogation of his client. In *Peo-*

*ple v. Arthur,* 22 N.Y.2d 325, 292 N.Y.S.2d 663, 239 N.E.2d 537 (1968), the attorney had appeared at the police station and was denied access to his client.

Here, the attorney had made an inquiry of the police, but he acknowledges that he did not advise the police that he was representing appellant in this case and, other than the call, he took no action on behalf of appellant.

On the question of intelligent waiver by appellant, Sergeant Meyer testified that he advised appellant of his right of assistance of counsel. No question is raised as to the adequacy of the advice. Appellant acknowledged that he understood the advice and signed an acknowledgment to that effect. Sergeant Meyer inquired concerning his educational background and received information which led him to believe that appellant was capable of understanding the advice. Nothing in the course of the interview led the officer to conclude otherwise. The Miranda warning was repeated prior to the taking of the written statement. The appellant read the statement after it had been prepared and acknowledged by his signature that he had done so. He wrote the word "yes" in response to two questions on the written statement form. There is no contention of any sort of psychological pressure or unfair tactics in the interview, which originated with appellant's request.

Appellant points to reports of his mental examination, offered at the hearing on the motion to suppress, in which a psychiatrist and a psychiatric social worker at Western Missouri Mental Health Center reported that appellant had not done well in school, had left after the seventh grade and never learned to read or write. The psychiatrist found: "His general fund of knowledge, his intellectual endowment appears to be slightly below normal which may be attributed to educational, cultural and social deprivation." The social worker stated: "He gives the impression of having Borderline Mental Retardation, possibly due to cultural deprivation."

These factors are, of course, significant in determining whether or not appellant's waiver of his right to counsel was knowing and understanding. See *State v. Hyster*, 504 S.W.2d 90, 94–95[6], [7, 8] (Mo. 1974).

However, the testimony of Sergeant Meyer was adequate to sustain the state's burden of showing an intelligent and knowing waiver by appellant, there being no direct testimony of any lack of understanding on the part of appellant. See *United States v. Frazier*, 155 U.S.App.D.C. 135, 476 F.2d 891, 897[3] (1973).

Appellant has also relied upon the statement in *State v. White*, supra, regarding the effect of former Canon 9 of the Canons of Ethics (now DR 7–104(A)(1), Rule 4, Code of Professional Responsibility), prohibiting a lawyer from communicating with a party represented by counsel. In *White*, the court stated:

" * * * While this Canon does not purport to govern the conduct of non-lawyers, such as police officers, it does place a responsibility upon prosecuting attorneys not to sanction, or take advantage of statements obtained from local or state police officers from a person represented by counsel, in the absence of counsel." 494 S.W.2d 692[8].

In *Moore v. Wolff*, supra, the court, in rejecting the per se rule appellant would apply here, also refused to fashion an exclusionary rule of constitutional stature from the provisions of the Code of Professional Responsibility. 495 F.2d 37[4]. The professional responsibility of attorneys referred to in *White* was a factor considered by the court in viewing the circumstances which led to the conclusion that there could have been no valid waiver of right to assistance of counsel in that case. *White* did not lay down a new exclusionary rule, based upon the Code of Professional Responsibility alone. The circumstances of this case do show an effective waiver of right to assistance of counsel. Such waiver having been shown, the Code of Professional Responsibility has no role in the admissibility of the statements.

Judgment affirmed.

All concur.