**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Glynn OWENS, Defendant-Appellant.**

No. 10995.

Missouri Court of Appeals,
Southern District,
Division Three.

May 30, 1979.

Motion for Rehearing or to Transfer to
Supreme Court Denied June 18, 1979.

Application to Transfer Denied
July 17, 1979.

James A. DeReign, Caruthersville, for defendant-appellant.

· John D. Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

GREENE, Judge.

On November 30, 1977, defendant Glynn Owens was found guilty in the Circuit Court of New Madrid County of two counts of rape, after trial by jury. Defendant filed a motion for new trial on December 14, 1977, which motion was denied. On January 13, 1978, the trial judge sentenced

defendant to life imprisonment, in accordance with the verdict of the jury, on the two counts of rape, said sentences to run concurrently. Defendant filed a notice of appeal in the supreme court, which court, by order of April 3, 1978, transferred the case to this court, in which jurisdiction is now vested.

■ Defendant concedes, by motion requesting us to consider his appeal under the plain error doctrine filed in this court on April 6, 1979, that his motion for new trial was not timely filed. This being so, we are precluded from considering any matters required to be preserved in such motion, *State v. Parker,* 310 S.W.2d 923, 924 (Mo.1958), unless we consider such objections that are raised in his motion for new trial and in his brief on appeal under Rule 27.20(c),[1] to determine if manifest injustice or miscarriage of justice has resulted from alleged trial court error affecting the substantial rights of the defendant. We sustain the motion and review under the plain error doctrine, as the defendant was 15 years old at the time of the alleged crimes, and because of the severity of the sentence.

The facts in the case are as follows. On February 14, 1976, at about 8:25 p. m., Kate Smith, Deputy Juvenile Officer of the 34th Judicial Circuit of Missouri, received a call from a Caruthersville police officer, John Yerby, concerning the alleged rape and beating of a thirteen year old female. Officer Smith immediately investigated the incident. The girl in question, unnamed here because of her tender years and hereinafter referred to as the victim, told Officer Smith that earlier that evening she was walking to her grandmother's house from the Gem Theatre, when she heard someone running behind her. She turned around and saw a young male person who had a knife in his hand. He told her to come with him or he would kill her. He forced her to accompany him to an old shed where he forced her to the ground, hit her in the face to make her spread her legs, cut her hand with his knife during the struggle, and then raped her.

Two other young males approached the scene, and the first rapist then asked them if they wanted some too. She was carried into the shed where she was beaten further, raped again by her first assailant, later identified as the defendant, and raped for a third time by one of the other young males. Juvenile Officer Smith observed that the victim had swollen eyes, with the right eye being discolored. Her mouth was cut and swollen. She had small cuts above and below her lips and on the index finger on her right hand. She told Officer Smith that she knew her assailant, but did not know his name, as they had attended the same school. She later identified the defendant in a lineup as the person who had beaten her, cut her with his knife and raped her twice on February 14, 1976. Officer Smith, after completing her investigation, filed a petition in the Juvenile Court of Pemiscot County, Case No. 362. The petition was a proceeding filed under § 211.-091,[2] seeking to bring the defendant under the jurisdiction of the juvenile court as he was 15 years old at the time of the alleged assault and multiple rapes.

Juvenile Officer Smith then filed a motion seeking to have the petition dismissed so that prosecution could be instituted against defendant under general law. A hearing was held before the juvenile judge of Pemiscot County on February 24, 1976, for the purpose of determining whether or not the motion should be sustained. After hearing, the juvenile judge entered an order dismissing the petition so that the defendant could be prosecuted under general law for the crime of rape. A felony complaint was then filed against defendant in the Magistrate Court of Pemiscot County, charging defendant with two counts of rape. A preliminary hearing was held before the magistrate on March 9, 1976, after which the magistrate court found that there was probable cause to believe that the defendant was guilty of the crimes charged, and bound him over to the circuit court for trial.

---

1. Unless otherwise noted, all references to Missouri Supreme Court Rules are to V.A.M.R.

2. Unless otherwise noted, statutory references are to RSMo 1969, V.A.M.S.

The prosecuting attorney then filed a two count information in the circuit court charging defendant in each count with rape. Defendant filed a motion to dismiss the information, alleging that the juvenile certification process had been defective, in that insufficient evidence had been presented at the juvenile hearing for the juvenile judge to make a determination that the defendant was not amenable to the juvenile process, and further that the reasons given by the judge in his certification order were not legally justifiable reasons and were so broad and vague that the order denied due process of law to the defendant. Defendant then applied for and received a change of venue, and a change of judge. The case was transferred to New Madrid County, where a successor trial judge overruled the motion to dismiss.

Defendant then filed a petition for writ of prohibition in this court in case No. 10615, seeking to prohibit the trial judge from proceeding, for the reason that the juvenile certification process was faulty in that the reasons given by the juvenile judge for dismissing the juvenile petition and permitting defendant to be tried as an adult were insufficient under the case law of this state. This court, on that basis, issued a permanent writ of prohibition against the trial judge. The case was then remanded to the Juvenile Court of Pemiscot County. An amended § 211.091 petition and an amended motion to dismiss the petition, so that defendant could be prosecuted under the general law, were filed by the juvenile officer. A second certification hearing was then held before a successor juvenile judge. A summarization of the testimony of the witnesses is as follows:

Gerald Corbin was a retired school teacher. He had taught Industrial Education in the Caruthersville school system and defendant had been one of his students. Defendant did not seem to want to apply himself. He would walk around in class, interrupt the class and would not work. When defendant violated a rule, and was so advised, he would argue with the teacher. On one occasion, defendant told Corbin he could have "got" Corbin when he had seen Corbin in defendant's neighborhood. The teacher found it necessary to place defendant in detention. Defendant then quit the class.

Joe Parkinson was the high school principal. He testified that defendant only came to school about half the time. He had talked to defendant's grandmother about the truancy and the grandmother said, "I can't take care of him". Defendant was living with her at the time. Defendant was called to the principal's office five or six times because of truancy. Parkinson dropped defendant from Mr. Corbin's class because defendant had threatened Corbin. Defendant's grades were average to a little below average, and his intelligence quotient was average to slightly below average.

Kate Smith, the Deputy Juvenile Officer, testified that before the rapes, defendant had been brought to the attention of the juvenile officer on complaints of vandalism, truancy and indecent exposure. She related the facts concerning her investigation of the rape and assault that we have previously referred to in this opinion. She did not believe that the Division of Youth Services could properly handle the defendant and that defendant would escape if he was put with the Division of Youth Services. She testified that status offenders, such as defendant, were hard to deal with and that the best interest of society would be served by certifying defendant to adult court. As to her reasons for this opinion, she testified that defendant had no adult guidance, that he would not stay in school, that he would not obey rules, and that his attack and rape of the thirteen year old victim had been a crime of vicious nature. It was also her opinion that defendant was incorrigible. She further stated that defendant showed no remorse because of the rape and assault.

The victim then testified, over the objection of the defendant. The grounds for the objection were that the allegations of the crime in the petition were sufficient and that the testimony of the victim was unnecessary. She was thirteen years old on February 14, 1976. On that evening she was

walking from the Gem Theatre to her grandmother's house. Someone grabbed her from behind and said he would kill her if she did not keep still. The person who grabbed her was the defendant. He had a knife in his hand. He took her behind a shed and told her to take off her clothes. Defendant hit her in the face and threatened to kill her if she did not comply. In the struggle, he cut her on the hand with the knife. He forced her to the ground and forced his penis into her body. Two other young males approached and defendant asked them if they wanted some, and one said "Yes". They took her inside of the shed where defendant raped her again, and then she was raped by one of the other young males. Defendant told her, after the rapes, that if she said anything, he would get her again and kill her. She then went to her grandmother's who called her mother and from there she was taken to a doctor. The victim's bloodstained clothing was introduced into evidence, over the objection of the defendant, to show the viciousness of the attack.

Troy McCullough then testified. He was a Deputy Juvenile Officer of Pemiscot County. He related further details of the indecent exposure incident that occurred in November of 1975. The complaint was that defendant and his girlfriend had been found nude in a vacant house. He said that defendant needed a type of supervision not provided by the Division of Youth Services. As further evidence, it was stipulated that while defendant was in custody on the rape charge, he absented himself without leave, while serving as a trusty and remained absent until apprehended. This concluded testimony for the state.

Defendant then presented testimony. By stipulation, a psychiatric evaluation report based on an examination of defendant, was admitted into evidence. This psychiatric report showed that defendant had a previous history of anti-social behavior, that defendant appeared intelligent, and that he was not psychotic.

Paul F. Hess then testified. He was the Regional Director of Youth Services. He had classified a number of juveniles who had committed serious crimes such as murder, arson, rape and assault. He said that if the court committed the defendant to the Division of Youth Services that they could place him in an appropriate place. On cross-examination, he testified that he had one forcible rapist under his supervision, but, to his knowledge, he did not have any juveniles assigned to him who had also assaulted the person that they had raped. He could not assure the court that defendant would not escape if assigned to Youth Services. When questioned by the court, he testified that the longest period of time that anyone had been committed to the Division of Youth Services was 14 months. He could not say, on the basis of his limited contact with defendant, that the Division of Youth Services was prepared to cope with any problem which he might present.

Beatrice Stapleton then testified. She was the maternal grandmother of defendant, and took care of him. His mother was dead, and he had been abandoned by his father. Defendant had formerly lived with his paternal grandmother, Mrs. Owens, but ran away, and came to live with Mrs. Stapleton in the summer of 1975. She had difficulty taking care of defendant. She said that defendant had denied raping the victim. She could not make defendant go to school and could not handle him. Defendant came and went as he pleased.

Peggy Jackson, the maternal aunt of defendant, testified that she helped her mother take care of defendant in the summer of 1975. She said defendant was in a very confused state of mind. He had left Caruthersville without permission, had gone to Arkansas, and had finally come back. She took defendant to California with her, but he came back to Missouri in a few months.

Barbara Lewis, also a maternal aunt of defendant testified that defendant stayed with her in California from July to September of 1975. She did not have any difficulty with defendant.

Lizzie Owens was the final witness for the defendant. She was his paternal grandmother. Defendant stayed with her part of

the time. She kept him for ten years. He wanted to stay with Mrs. Stapleton and left the home of Mrs. Owens. Defendant denied the crime to her. There was no further evidence in the juvenile certification hearing.

The successor juvenile judge, on June 23, 1977, issued an order dismissing the juvenile petition to allow prosecution of defendant under the general law. The order recited that defendant was not a proper subject to be dealt with under the juvenile code for the reasons that, a) the juvenile defendant was a well-developed, mature and experienced person of average or above average intelligence; b) he was not suffering from any mental disease or defect and had the capacity to understand the proceedings against him, and to assist his attorney in his defense; c) the charges alleged, if found to be true, indicated an aggressive, vicious, violent and willful manner of conduct on the part of the defendant; d) defendant had demonstrated, by his prior behavior in the home of his grandmother and in his prior experiences with the juvenile court, that he could not adjust, and did not intend to adjust, to the non-criminal demands of society, and that he needed to be confined in a more structured environment than was available in institutions operated by the Division of Youth Services; e) there was a reasonable likelihood that similar future conduct would not be deterred by continuing the defendant under the juvenile law process; f) the nature and seriousness of defendant's conduct constituted a threat to the community, and no facilities existed within the juvenile code which offered reasonable expectation of treatment and rehabilitation of defendant and which would afford protection to the community from future acts of the defendant, and that defendant was likely to escape if placed in any juvenile facility now available in Missouri; g) most juveniles are now being held in the juvenile facility for approximately 8 or 9 months and few are held beyond 14 months, and the maximum time that defendant could be held was 4 years and 2 months; and, h) in the totality of the circumstances, and because of all of the reasons stated, defendant should be dealt with under the general law, rather than within the limited purposes and time of any juvenile facility.

A felony complaint was then filed against defendant charging him with two counts of rape. Hearing was waived, and defendant was bound over for trial. The prosecuting attorney of Pemiscot County, on August 12, 1977, filed a two count information against defendant, in Case No. 835, charging defendant in each count with the crime of rape, under § 559.260, the pertinent portion of which states, "Every person who shall be convicted of rape, either by carnally and unlawfully knowing any female child under the age of sixteen years . . . shall be punished by imprisonment by the division of corrections for not less than two years". The statute does not set any maximum penalty.

Defendant then applied for, and received, a change of venue and a change of judge. The case was again transferred to New Madrid County, and a special judge was assigned. Defendant filed a motion to dismiss the information, alleging that § 559.-260, under which he was charged, did not contain a maximum limit of punishment and, therefore, conferred a delegation of legislative authority upon a judge or jury, in violation of Article II, Section 1 of the Missouri Constitution, thereby denying defendant due process of law. The trial judge overruled the motion.

Defendant also filed two motions to suppress evidence. The first which sought to exclude from evidence an oral confession to the crime made by defendant to Deputy Juvenile Officer Smith was sustained by the court and such evidence was excluded. The second motion to suppress sought to exclude as evidence the testimony of the victim for the reason that she had testified at the certification hearing, held pursuant to § 211.071 on June 23, 1977, and that, therefore, she was prohibited from testifying at the trial by reason of § 211.271(3), which section provides, in part, that all evidence given in cases under chapter 211 is not lawful or proper evidence against the

child and shall not be used for any purpose whatsoever in any proceeding, civil or criminal, other than proceedings under chapter 211. This motion was overruled by the trial court.

The case went to trial on November 30, 1977. The victim testified, over the objection of the defendant for the reasons given in his motion to suppress her testimony. She testified that she was 13 years old on February 14, 1976. Her testimony detailed the two rapes by the defendant, the threats to kill her, the beatings, being cut by defendant's knife, and the identification of the defendant as the person who had beaten and raped her. Much of this testimony was similar to the testimony she had given at the juvenile certification hearing. Her testimony made a submissible case of rape on both counts. The victim identified the bloodstained clothing that she had worn at the time of the attack. The clothing was admitted into evidence and passed to the jury, over defendant's objection that the clothing she wore at the time of the rape was immaterial and prejudicial.

Dr. McKaskle then testified that he examined the victim on February 14, 1976, in the emergency room of the Pemiscot County Hospital. In addition to his visual examination, three laboratory tests were performed, which were, 1) acid phosphatase, 2) urine, and 3) drop slide test of vaginal secretions. He testified that the victim had been beaten, her lips were bruised and swollen, her cheeks were bruised, and there were hemorrhages under the skin on her neck and chest. She had a cut on her left index finger, an abrasion on her left knee and dirt on her knee and buttocks. Her hymen was edematous, and her vagina was very red. The girl was in a state of semi-shock. He testified that evidence of male ejaculation, consisting of acid phosphatase was found in the acid phosphatase test, and that male sperm was found in the drop slide test.

On cross-examination, it was learned that Dr. McKaskle had not performed the acid phosphatase and urine tests as they had been run by Mr. Trowbridge, the chief technician at the laboratory. Defendant objected, and requested that the testimony relative to those two tests be stricken. No other relief was requested by the defendant on this issue. After other testimony for the state and for the defendant, that is not relevant here, both sides rested their case.

Written instructions for the jury were then prepared. Defendant submitted instructions No. D–A and D–B, which were refused by the court. Instruction No. D–A reads as follows:

"As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about the 14th day of February, 1976, in the County of Pemiscot, State of Missouri, the defendant inserted his sexual organ into the sexual organ of (name deleted by us to protect the identity of the victim), and

Second, that at that time (victim) was less than 16 years of age, then you will find the defendant guilty under Count I of rape.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, you must find the defendant not guilty of that offense.

If you do find the defendant guilty under Count I of rape, you fill fix his punishment at imprisonment by the Department of Corrections for a term fixed by you, but not less than two years' imprisonment."

Instruction No. D–B reads the same as D–A except that it applied to Count II of the information.

Instruction No. 5 reads as follows:

"As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on the 14th day of February, 1976, in the City of Caruthersville, County of Pemiscot, State of Missouri, the defendant inserted his sexual organ to any extent into the sexual organ of (victim), and

Second, that at that time (victim) was less than 16 years of age, then you will

find the defendant guilty under Count I of rape.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, you must find the defendant not guilty of that offense.

If you do find the defendant guilty under Count I of rape, you will fix his punishment at imprisonment by the Department of Corrections for a term fixed by you, but not less than two years nor more than life imprisonment."

Instruction No. 7 read the same as Instruction No. 5 except that it applied to Count II of the information.

The jury, after receiving all instructions, returned a verdict of guilty on each count and recommended a punishment of life imprisonment. Defendant, on appeal, raises five points of claimed error which are as follows:

## "POINT ONE

The order of the Juvenile Court of Pemiscot County waiving jurisdiction over appellant under Missouri Revised Statute section 211.071 entails error and/or an abuse of discretion on the part of the Juvenile Court judge because reasons stated by the court for waiver are inadequate, are unsupported by findings of fact, and are unsupported by any competent evidence.

A) The reasons stated by the court for transfer of the juvenile were inadequate legal bases for waiver of Juvenile Court jurisdiction and deprived appellant of the right to due process of law as guaranteed by the fourteenth amendment to the United States Constitution and by Article One Section Ten of the Missouri Constitution.

B) The reasons stated by the court for finding that the juvenile was not a proper subject to be dealt with under the juvenile code are inadequate because they are not supported by findings of fact.

C) The order dismissing the original exclusive jurisdiction of the Juvenile Court was void because it was not supported by any competent evidence.

D) This court should not feel compelled to uphold the transfer order by the Pemiscot County Juvenile Court because appellant has undergone a trial under the general law, has advanced in age, or because of the subsequent elapse of time."

## "POINT TWO

The trial court committed reversible error when it overruled defendant's motion to dismiss and when it refused defendant's MAI–CR 6.42 modified instruction, in that section 559.260 Revised Statutes of Missouri is unconstitutional because it does not prescribe a maximum punishment, thus allowing the court and the jury to engage in a legislative power in violation of Article II Section 1 of the Missouri Constitution and the fourteenth amendment of the Constitution of the United States regarding due process of the law and further MAI–CR 6.42 was inconsistent with the offense charged in that the instruction did not conform to the precise language of section 559.260 Revised Statutes of Missouri."

## "POINT THREE

The court committed reversible error when it overruled defendant's motion to suppress the testimony of the victim and further erred when it overruled defendant's objection to the testimony of the victim when an objection had already been made at the juvenile transfer hearing, in that section 211.271 Revised Statutes of Missouri prohibits 'all evidence given' at the juvenile hearing from later being used at a criminal trial, or otherwise."

## "POINT FOUR

The court committed reversible error when it overruled defendant's objection to the introduction into evidence of the blood stained jacket and blouse of the victim and further erred when it overruled defendant's objection to allowing the items to be circulated within the jury box, in that the evidence was immaterial to the charge of statutory rape and the evidence tended to inflame the prejudices of the jury and confuse the issues before the jury."

## "POINT FIVE

The court committed reversible error when it overruled defendant's objection to the testimony of Doctor McKaskle regarding forensic examinations, when on cross-examination two tests were shown to be hearsay, in that the bad faith direct examination by the prosecutor was designed to avoid the hearsay nature of the evidence, of which the prosecutor was aware."

We discuss and rule on each of defendant's points in the order in which they are listed.

## POINT ONE

■ Defendant did not, at or before time of trial in the Circuit Court of New Madrid County, file any motion to quash or dismiss the information for any alleged defects in the juvenile proceedings, nor did he file any motion to remand for further juvenile proceedings. It was incumbent on defendant to raise any defect or objection, constitutional or otherwise, which might refer to the waiver proceedings in juvenile court, in the circuit court before time of trial, by motion to quash the information or to remand to juvenile court for further proceedings there. Having failed to do so, all alleged errors in point one have been waived. *Richardson v. State,* 555 S.W.2d 83, 87 (Mo.App.1977). See also *Jefferson v. State,* 442 S.W.2d 6, 12–13 (Mo.1969).

■ Even if such alleged errors had not been waived, there was substantial evidence in the record of the juvenile waiver hearing to establish and support each and every finding of the juvenile court in its order waiving jurisdiction. § 211.071 entrusts the determination of whether or not to relinquish juvenile jurisdiction to the discretion of the juvenile judge. It is true that such discretion has legal limits, and that the judgment waiving jurisdiction must be accompanied by a statement of reasons and supported by facts in the record so that a meaningful review is possible. *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). The standard of review is whether or not, in reaching its conclusion to waive jurisdiction, the juvenile court, in view of the totality of the relevant circumstances, abused its discretion. *State v. Kemper,* 535 S.W.2d 241, 247 (Mo.App.1975). See also concurring opinion of Donnelly, C. J., in *State ex rel. T.J.H. v. Bills,* 504 S.W.2d 76, 83 (Mo. banc 1974).

■ Relevant factual criteria which have been used by the courts as a basis for such discretion are 1) whether the juvenile's age, maturity, experience and development are such as to require prosecution under the general law, *Coney v. State,* 491 S.W.2d 501, 512 (Mo.1973), 2) whether or not the juvenile had a mental disease or defect which would prevent him from knowing or appreciating the nature, quality or wrongfulness of his conduct and which would render him incapable of conforming his conduct to the requirements of the law, *State v. Kemper,* supra, at 249, 3) whether or not the nature and seriousness of the juvenile's conduct constitutes a threat to the community, *State ex rel. Arbeiter v. Reagan,* 427 S.W.2d 371, 377 (Mo. banc 1968), 4) whether or not the act committed by the juvenile was done in a violent and vicious manner, *Coney v. State,* supra, at 512, and, 5) whether or not there is a reasonable likelihood that like further conduct will not be deterred by continuing the juvenile under the juvenile law process, *State ex rel. T.J.H. v. Bills,* 495 S.W.2d 722, 728 (Mo.App.1973). The *Bills'* decision further holds that any factor which tends to predict the suitability or unsuitability of the juvenile law process for rehabilitation of the juvenile is relevant to the determination of whether he is a proper subject to be dealt with under the law. In this case, there was evidence that the conduct of defendant toward the victim was vicious, violent, and premeditated, and that no juvenile facilities existed that could reasonably be expected, within the maximum time when he could be confined there, to rehabilitate him. Further there was evidence that he needed to be in a structured environment, that he did not choose to adjust to the normal demands of society, and that there was no reasonable likelihood that similar future conduct would be deterred by continuing him under the care, protection and discipline of the juvenile process.

We hold that the juvenile judge reasonably concluded, considering the totality of the circumstances, that defendant should be dealt with under the general law, rather than sheltered within the benign, rehabilitative structure of the juvenile code for a period limited, at the most, to four years and two months.

## POINT TWO

■ Defendant urges that the trial court committed reversible error when it overruled his motion to dismiss for the alleged constitutional deficiency of § 559.260 in failing to include a maximum punishment upon conviction of the crime of rape, when it gave instructions 5 and 7 to the jury (MAI–CR 6.42) and when it refused to give instructions D–A and D–B (MAI–CR 6.42 modified). In support of his point, defendant alleges that § 559.260 is unconstitutional in that it does not prescribe a maximum punishment, thus delegating legislative power to the court and jury in violation of Article II, Section 1 of the Missouri Constitution and the 14th Amendment to the Constitution of the United States. This argument is not persuasive. § 559.260, which provides a two year minimum sentence on conviction of rape, but does not provide a maximum must be read in conjunction with § 546.490 which provides in part "whenever any offender is declared by law punishable, upon conviction, by imprisonment in the penitentiary for a term not less than any specified number of years, and no limit to the duration of such imprisonment is declared, the offender may be sentenced to imprisonment during his natural life, or for any number of years not less than such as are prescribed, . . . ." Therefore, the maximum punishment allowable for conviction of the crime of rape is life imprisonment, or for any number of years not less than two, so it naturally follows that § 559.260, when read with § 546.490, is constitutional and does not delegate the legislative power of prescribing minimum and maximum punishment for crimes to a judge or a jury. The trial court was correct in overruling defendant's motion to dismiss.

■ We also conclude that the trial court was correct in giving instructions 5 and 7 (MAI–CR 6.42) and in refusing instructions D–A and D–B (MAI–CR 6.42 modified). MAI–CR instructions are required to be given where applicable, and the trial court would have committed error had it failed to give such instructions. *State v. Dodson,* 556 S.W.2d 938, 951 (Mo.App.1977). See also Rule 20.02(a), (c) and (e). We hold that MAI–CR 6.42 was the applicable instruction to give in this case on Counts I and II (instructions 5 and 7) as such instructions correctly stated the law under the submissible facts of the case. They prescribed a minimum punishment upon conviction (two years) and a maximum punishment (life) and properly delineated the elements of the crime. In contrast, it would have been error to give instructions D–A and D–B, offered by defendant, as such instructions did not include the statutory maximum punishment, *State v. Duddrear,* 309 Mo. 1, 5, 274 S.W. 360, 361 (1925), and would have let the jury fix the punishment without judicial reminder of the statutory maximum fixed by the legislature.

For the reasons stated, the trial court did not err in overruling defendant's motion to dismiss, in giving instructions 5 and 7, and in refusing instructions D–A and D–B.

## POINT THREE

Defendant, in this point, contends that the trial court erred when it permitted the victim to testify, over the objection of defendant, because she had previously testified to basically the same facts at the juvenile waiver hearing. Defendant bases his argument on § 211.271(3), which states, "after a child is taken into custody as provided in Section 211.131, all admissions, confessions, and statements by the child to the juvenile officer and juvenile court personnel and all evidence given in cases under this chapter, as well as all reports and records of the juvenile court, are not lawful or proper evidence against the child and shall not be used for any purpose whatsoever in any proceeding, civil or criminal, other than proceedings under this chapter".

In effect, what defendant is saying here is that the victim, after having testified at the waiver hearing, was incompetent to testify at the trial. If he is correct, the judgment must be reversed, as there was no evidence submitted to the jury on the issue of criminal agency of the defendant other than the victim's testimony. This is a question of first impression in Missouri. The issue was commented on by Judge Finch in his concurring opinion in *State ex rel. Arbeiter v. Reagan,* 427 S.W.2d 371, 378 (Mo. banc 1968), where he stated "[A]lthough the statute says the evidence given in the juvenile proceedings is not lawful or proper evidence against the child for any purpose whatsoever, this does not necessarily mean, in my judgment, that the lips of one who testified in the juvenile proceedings are sealed so that he.may not be a witness in a subsequent criminal proceeding".

It is our opinion that the comments of Judge Finch were well reasoned and that they are consistent with the holdings of other jurisdictions on the same issue. In *People v. Hammond,* 27 Mich.App. 490, 494–495, 183 N.W.2d 623, 625–626 (1970), the Michigan Appellate Court was faced with the issue of whether certain physical evidence, photographs and other demonstrative evidence, which had been offered and received in evidence in the juvenile court proceeding, could be used as evidence at trial in the adult court after waiver of juvenile jurisdiction. The Michigan statute provided: "A disposition of any child under this chapter, or any evidence given in such case, shall not, in any civil, criminal or any other cause or proceeding whatever, in any court, be lawful or proper evidence against such child for any purpose whatever, except in subsequent cases against the same child under this chapter".

The Michigan court concluded that the intent of the statute was to prohibit the *actual testimony* given at the juvenile hearing from being used in any other proceedings, except a subsequent case against the child in the juvenile court, and was not meant to preclude physical evidence, nor exclude a witness who testified at the juvenile proceedings from testifying on the same subject matter at a subsequent adult trial. The court concluded that what is forbidden was the use of the actual testimonial evidence, taken from the transcript of the juvenile hearing, as either substantive evidence or for the purposes of impeachment, at a subsequent trial in adult court.

The conclusion reached by the Michigan court is in accord with common sense. Normally, there are few eye-witnesses to a crime, and in the case of rape, usually only the rapist and the victim are present. The few witnesses who do exist, such as police officers, doctors, laboratory technicians and the victim, will often be required to testify at the waiver hearing in juvenile court, if the juvenile and the state are to have a full and fair hearing there. To say that if the juvenile court waives jurisdiction those witnesses must remain mute at a subsequent criminal trial would render the waiver proceedings meaningless, as the prosecuting attorney would not have any witnesses who would be allowed to testify in the criminal trial. We find nothing in § 211.271(3) that prevents a prosecuting attorney from using witnesses in the state's case who had earlier testified at a juvenile waiver hearing on the same subject matter. See also *Gallegos v. People,* 145 Colo. 53, 358 P.2d 1028 (1960), rev'd on other grounds, 370 U.S. 49 (1962) for additional comments on the same subject matter.

We do not believe that our conclusion on this issue does violence to the purposes of the statute. Statutes such as § 211.271(3) are designed to "hide youthful errors from the full gaze of the public and bury them in the graveyard of the forgotten past". *State v. Guerrero,* 58 Ariz. 421, 430, 120 P.2d 798, 802 (1942). However, the purpose of the juvenile waiver hearing is to determine if youthful errors are, in fact, "youthful". Implicit in the waiver of jurisdiction by the juvenile court in this case was the conclusion that a vicious, premeditated, unprovoked assault upon a thirteen year old girl, during which assault she was beaten until she bled, was cut with a knife, and was raped three times, was not a "youthful

error". The purpose of the statute was, therefore, not violated in the case by permitting the victim to testify at time of trial after she had testified to substantially the same facts at the juvenile waiver hearing. In our opinion, the action of the trial court, in overruling defendant's objection to the testimony of the victim, at the time of trial, was proper, and we so hold.

## POINT FOUR

Defendant next contends that the trial court erred in admitting into evidence, over the objection of the defendant, the bloodstained jacket and blouse of the victim, which she had been wearing on the night of the assault. He argues that the blood on those items was from her face and hand, and not from her vagina, and was, therefore, immaterial and prejudicial since the prosecutor had not charged the defendant with forcible rape. We reject this argument. The victim testified at trial that she had been to a movie and was walking to her grandmother's house; that she was grabbed from behind by the defendant, who threatened her with a knife; that she was taken to a shed where she was beaten in the face; that defendant bit her lip until it bled; that her finger was cut by defendant's knife; and, that she was the victim of multiple rapes. The bloodstained clothing was admissible, as it corroborated the victim's testimony as to the entire series of events. A defendant cannot expect to exclude acts of brutality perpetrated in the commission of a crime and performed as part of the very means of accomplishing it. Clothing is admissible in evidence if it tends to prove some material fact in issue, such as the connection of the defendant with the crime. *State v. Swinburne,* 324 S.W.2d 746, 752 (Mo. banc 1959). The clothing did so in this case and the trial court properly exercised its discretion by admitting it.

## POINT FIVE

Defendant contends, as his final point on appeal, that the trial court erred in overruling his objection to the testimony of Dr. McKaskle regarding forensic examinations,

for the reason that on cross-examination it was learned that two of the three tests had been made by a laboratory technician and that the doctor's testimony as to the results of the two tests was hearsay. Defendant deduces from this set of facts that the prosecuting attorney knew that such testimony would be hearsay, proceeded in bad faith to elicit such hearsay testimony, and, for such reason, should be punished by having this court declare prejudicial error. We are not inclined to do so.

At the trial, Dr. McKaskle testified that three laboratory tests were performed from the victim's body secretions. These tests were an acid phosphatase test, a urinalysis, and a drop slide test of vaginal secretions. He testified that acid phosphatase is a chemical that is manufactured in a male's prostate gland. He was then asked if any of this substance was found in the body of the victim. Defendant's counsel then objected on the grounds of hearsay. There was nothing before the court, at that time, to indicate that such testimony was hearsay, and defendant's counsel did not inform the court why he thought the testimony was hearsay. Later, on cross-examination, Dr. McKaskle testified that he had not performed the acid phosphatase and urinalysis tests, whereupon defendant's counsel requested that any testimony concerning such tests be stricken. The judge so ordered, and ordered the jury to disregard any testimony concerning those tests. Defendant did not ask for a mistrial, or any other relief, other than what he asked for and received.

Since defendant received all of the relief he asked for from the trial court, he has not preserved anything for review on this point. *State v. Platt,* 525 S.W.2d 637, 641 (Mo.App. 1975). Not only did the court strike the testimony of the two tests, but Dr. McKaskle had personal knowledge of the third test (the drop slide) and, from such test, found male sperm in victim's vaginal secretions, which was the whole point of the testimony concerning the laboratory procedures. Since this was sound evidence supporting the state's allegation of sexual penetration

of the body of the victim, the alleged impact of so-called prejudice from the brief remarks of Dr. McKaskle regarding hearsay information received by him, which remarks were ordered stricken by the court following objection, loses its possible sting. The point is not well taken.

We have carefully reviewed the record and find no prejudicial error. We were especially mindful of the fact that the defendant was fifteen years old at the time of the crimes and that two life sentences were pronounced against him, both of which facts are serious matters which necessitate meticulous review. At the same time, we are mindful of the interests of society and of the right of the thirteen year old victim to have the person who beat her severely and raped her brought to the bar of justice. We have found that the defendant was properly brought before the trial court and the jury, after a valid waiver of juvenile court jurisdiction, and that no prejudicial error occurred at the trial court level.

The jury verdict of guilty on both counts and recommending life imprisonment is supported by overwhelming evidence, and should not be disturbed. The judgment is affirmed.

FLANIGAN, C. J., and BILLINGS and MAUS, JJ., concur.