In Interest of A. D. R., a child under seventeen years of age.

**STATE of Missouri, Respondent,**

v.

**Arthur Daniel RONE, Jr., Appellant.**

**Nos. 61177, 56658 and 57596.**

Supreme Court of Missouri,
En Banc.

Aug. 18, 1980.

Dale C. Doerhoff, Jefferson City, for appellant.

John Ashcroft, Atty. Gen., Robert Presson, Asst. Atty. Gen., Jefferson City, for respondent.

RENDLEN, Judge.

In this post-conviction civil action, movant asks this Court to recall the mandate and vacate our opinion affirming his robbery conviction, contending that defense counsel in the criminal appeal, was ineffective by constitutional standards. Such action, cognizable by our Court as the tribunal which heard and determined the appeal, is limited to consideration of that single issue, see *Hemphill v. State*, 566 S.W.2d 200, 208 (Mo. banc 1978), and governed by procedures prescribed for Rule 27.26 proceedings insofar as applicable.

Recently in *Seales v. State*, 580 S.W.2d 733, 736 (Mo. banc 1979), we reiterated the standard for appraising ineffective assistance of counsel claims in post-conviction proceedings as follows: "In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances and that he was prejudiced thereby." The standard there enunciated for gauging trial counsel's conduct is appropriate for general application and is now adopted for evaluation of appellate counsel's actions.

Rone first asserts appellate counsel was ineffective in failing to properly preserve and present the then minor defendant's (movant here) challenge to the juvenile court's relinquishment of jurisdiction and because of that failure the issue was not reached on appeal, see *In re A.D.R.*, 515 S.W.2d 438, 439 (Mo. banc 1974).[1]

When first considering Rone's motion to recall the mandate we made the preliminary determination that appellate counsel had failed to properly preserve the issue of the alleged error in the juvenile court's termination proceeding and as a result the issue was not reached on appeal. Accordingly, we recalled our mandate. However, having now reviewed the record and considered the merit of movant's contention we find, for reasons following, the juvenile court acted properly in terminating its jurisdiction allowing Rone's trial as an adult. Thus no prejudice flowed from the failure to preserve the issue and Rone's contention of ineffective assistance of appellate counsel must be denied.

Arthur Rone was convicted of first degree robbery in the circuit court of Jackson County September 29, 1971. The Jackson County Juvenile Court, pursuant to § 211.071, RSMo 1969, had entered an order terminating its jurisdiction and allowing Rone's (who was sixteen at the time of his offense) prosecution under the general law.

At about 9:00 p.m., December 14, 1970, the Abashion Confectionery in Kansas City was robbed by two youths, one of whom confronted the victim with a shotgun and said "Look at this, this is a holdup." The clerk thought it was a joke, but that impression was quickly dispelled when the robber shoved the muzzle against his chest and demanded money. Taking some currency, the robbers left and one of them, Rone, fired a blast into the ceiling of the store.

1. Our opinion in that case involved two causes consolidated on appeal: *State v. Rone*, No. 57596 (appeal from Rone's criminal conviction) and *In re A.D.R.*, No. 56658 (appeal from termination of juvenile court jurisdiction).

Patrolman Bryant of the Kansas City Police heard the shot and saw the robbers running from the store with a "long barreled gun." Their escape was thwarted when the van they drove from the scene, collided with another vehicle during a high speed chase. Almost immediately thereafter both were arrested.

Defendant (movant here) was taken to the 27th Street police station and there given the *Miranda* warnings. According to Officer Bryant, during the booking process and not in response to any question, defendant volunteered that it wasn't his day, that the money taken in the holdup was not worth it, and that he wished he had his leather coat left in the van. Discovering Rone was sixteen years of age the officer took him to the youth unit at the downtown police headquarters where they met a deputy juvenile officer, known to Rone from the "parental home." In the presence of this juvenile officer Rone went to another part of the same building.

It is unclear whether Rone's parents were notified then of his arrest but one of the investigation officers testified that some of Rone's personal articles were delivered to his parents when they came to police headquarters, apparently on the night of his arrest. On the other hand one of Rone's parents denied being present at the police station. Having been advised of his *Miranda* rights on three separate occasions and while in the presence of Deputy Juvenile Officer Gardner, Rone made additional statements confessing complicity in the crime.

A petition was filed by the juvenile officer of Jackson County alleging that Rone participated in an armed robbery. Subsequently, on December 18, 1970, that officer filed a motion requesting dismissal of the petition, so Rone might be tried as an adult. At the hearing conducted January 29, 1971, under § 211.071, RSMo 1969, evidence as to the nature of the offense, Rone's amenability to treatment by the juvenile court, the adequacy of Missouri juvenile facilities to deal with the juvenile's problem and his incorrigibility as evidenced by the repeated referrals in the juvenile system, was presented. The juvenile court then dismissed the petition, relinquished its jurisdiction and entered an order allowing Rone's prosecution as an adult. Rone was tried in the circuit court and on his conviction of robbery first degree was sentenced to 15 years imprisonment.

Movant contends that chapter 211, RSMo 1969 creates a "right" to treatment for persons subject to the jurisdiction of the juvenile court and that the Juvenile Court's relinquishment of jurisdiction abrogated that "right." In this connection it has been held that when the State in its role as *parens patriae* places a child in a juvenile facility under restraint of liberty, it has a concomitant obligation to provide treatment. *Nelson v. Heyne*, 491 F.2d 352, 360 (7th Cir. 1974), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974); *Martarella v. Kelley*, 349 F.Supp. 575, 585 (S.D. N.Y. 1972). In those cases it was stated the right to treatment emanates from the eighth and fourteenth amendments to the United States Constitution. Other decisions have based the obligation for treatment on the ameliorative purpose of State juvenile acts. See *Janet D. v. Carros*, 240 Pa.Super. 291, 362 A.2d 1060, 1072 (1976). However, we need not reach the question of whether Chapter 211, RSMo 1969, creates such "right" to treatment for confined juveniles, because as movant recognizes, any such right is limited by the express terms of § 211.071, RSMo 1969, which provides that a child "not a proper subject" for the juvenile system may be prosecuted under the general law.[2] Once the juvenile court has relin-

2. Section 211.071, RSMo 1969, provides in full:
   *In the discretion of the judge* of the juvenile court, when any petition under this chapter alleges that a child of the age of fourteen years or older has committed an offense which would be a felony if committed by an adult, or that the child has violated a state or municipal traffic law or ordinance or that a minor between the ages of seventeen and twenty-one years over whom the juvenile court has jurisdiction has violated any state law or municipal ordinance, *the petition may be dismissed and such child or minor may be prosecuted under the general law, whenever*

quished jurisdiction, the juvenile is subject to criminal prosecution as an adult, *State v. Ford*, 487 S.W.2d 1, 5 (Mo. 1972), *cert. denied*, 411 U.S. 983, 93 S.Ct. 2277, 36 L.Ed.2d 959 (1973), and any juvenile treatment rights terminate.

■ While a laudable purpose of our juvenile code is the rehabilitation of erring youths, *State ex rel. Shartel v. Trimble*, 333 Mo. 888, 63 S.W.2d 37, 38 (Mo. 1933), the statute has been described as a complete code, with each section to be construed in relation to the other, *State v. Williams*, 473 S.W.2d 382, 383 (Mo. 1971). The legislature by providing that one not a proper subject may be prosecuted as an adult clearly intended in a proper case that consideration of societal needs and the likely unrewarding ameliorative effect of the juvenile justice system require application of the general law. Pertinent here is the following statement of this Court responding to a constitutional attack on an earlier statute: "Boys, like others of the species, are not cast in the same mould. Measures that are sufficient to reclaim one are wholly without avail as to another." *State ex rel. Boyd v. Rutledge*, 321 Mo. 1090, 13 S.W.2d 1061, 1066 (Mo. banc 1929).

Against this background we examine the question of whether the Jackson County Juvenile Court erred in relinquishing its jurisdiction.

Following *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), our Court has held the juvenile in such proceedings is entitled to notice, access to social reports and investigations pertaining to him, a hearing in which he is represented by counsel and, to permit meaningful appellate review, a statement of reasons for the termination. *State ex. rel. T.J.H. v. Bills*, 504 S.W.2d 76, 80–81 (Mo. banc 1974). However, the Supreme Court of the United States "has never attempted to prescribe criteria for, or the nature of quantum of evidence that must support, a decision to transfer a juvenile for trial in an adult court." *Breed v. Jones*, 421 U.S. 519, 537, 95 S.Ct. 1779, 1790, 44 L.Ed.2d 346 (1975). Missouri decisions have identified a variety of factors germane to a decision to terminate juvenile court jurisdiction in § 211.071 proceedings, *State ex rel. T.J.H. v. Bills*, 495 S.W.2d 722, 728 (Mo.App. 1973), and in *State v. Owens*, 582 S.W.2d 366, 374 (Mo. App. 1979), several were enumerated:

Relevant factual criteria which have been used by the courts as a basis for such discretion are 1) whether the juvenile's age, maturity, experience and development are such as to require prosecution under the general law, *Coney v. State*, 491 S.W.2d 501, 512 (Mo. 1973), 2) whether or not the juvenile had a mental disease or defect which would prevent him from knowing or appreciating the nature, quality or wrongfulness of his conduct and which would render him incapable of conforming·his conduct to the requirements of the law, *State v. Kemper*, supra, at 249, 3) whether or not the nature and seriousness of the juvenile's conduct constitutes a threat to the community, *State ex rel. Arbeiter v. Reagan*, 427 S.W.2d 371, 377 (Mo. banc 1968), 4) whether or not the act committed by the juvenile was done in a violent and vicious manner, *Coney v. State*, supra, at 512, and, 5) whether or not there is a reasonable likelihood that like further conduct will not be deterred by continuing the juvenile under the juvenile law process, *State ex rel. T.J.H. v. Bills*, 495 S.W.2d 722, 728 (Mo.App. 1973).

Pertinent to this determination are prior contacts of the youth with law enforcement authorities which reflect behavior patterns demonstrating imperviousness to the juvenile court's rehabilitative efforts. See *Richardson v. State*, 555 S.W.2d 83, 87 (Mo.App. 1977).

■ It is important to be mindful that appellate review of a juvenile court's decision to terminate jurisdiction as to a youthful offender is limited to a determination of

*the judge* after receiving the report of the investigation required by this chapter and hearing evidence *finds that such child or mi-*

*nor is not a proper subject to be dealt with under the provisions of this chapter.* (Emphasis ours.)

whether in the totality of the circumstances the court abused its discretion. *State v. Kemper*, 535 S.W.2d 241, 247 (Mo.App. 1975); *Coney v. State*, 491 S.W.2d 501, 512 (Mo. 1973). See *State ex rel. Boyd v. Rutledge*, 321 Mo. 1090, 13 S.W.2d 1061, 1066 (Mo. banc 1929). As we shall now discuss, it is clear the trial court reasonably exercised its discretion in those proceedings.

■ Rone had been referred to juvenile authorities on 15 previous occasions during the 20 months preceding the robbery. Those referrals reveal an escalating pattern of criminal behavior culminating in violent attacks on several victims. In the 8 months immediately before the armed robbery under consideration, Rone was referred for attempted larceny, rape, common assault and flourishing a deadly weapon during a fight in a pool hall. Further, he was unresponsive to the rehabilitative efforts of Jackson County juvenile authorities. After originally having been placed on probation, the referrals for criminal conduct continued and Rone was committed to McCune Boys Home in Jackson County. While there he was referred for auto theft, indecent exposure towards a teacher, and cited three times for making sexual overtures to female staff members. Subsequently he was released from McCune and returned to probationary status. Though there was testimony concerning the absence of referrals for other criminal offenses, while on probation he committed the armed robbery in question during which he fired a shotgun. Placing a loaded shotgun against the chest of a store clerk and then, having already obtained the proceeds of the robbery, discharging the weapon on his way from the store, may properly be characterized as a dangerous act, demonstrating a proclivity for violence and a disdainful attitude for the safety of others.

James F. Walsh, Director of Juvenile Court Services for Jackson County, testified that Rone was beyond the treatment scope of the Jackson County Juvenile Court and that Rone would be dangerous if he became associated with an older person in open society who would encourage him to use a weapon. Walsh's opinion was based upon Rone's behavior pattern, his overall negative adjustment, the nature of the crime, his association with adults and criminal activity, and his demonstrated lack of impulse control. Additionally, Rone's inability to control himself rendered the Missouri State Training School at Boonville inadequate. Walsh stated, "This boy's [Rone's] adjustment pattern in a wide open setting very similar to Boonville has been poor. His impulse control in associating with people that seem to lead him on or talk him into more serious offenses is pretty evident, so at a facility like Boonville that is open, cottage type, campus type of orientation with this young man's lack of impulse control would not be sufficient to keep him in while he is in essence being worked with."

Joseph Steffen, employed by the Jackson County Juvenile Court, stated existing juvenile court facilities were inadequate for Rone's treatment and accordingly recommended his trial as an adult.

In its order dismissing the juvenile petition, effectively terminating its jurisdiction, the juvenile court found there were no adequate juvenile facilities for Rone's treatment including the McCune Boys Home and the State Training School at Boonville, that Rone was not amenable to probation and that he constituted a danger to the community. Detailing Rone's previous referrals to the juvenile court and the previous efforts at treatment the court concluded that Rone, "is beyond further rehabilitative care, treatment, and services of this court; that every possible means and resource under the Juvenile Code to rehabilitate said child has been exhausted; that he would not benefit from any further care, treatment, and services under the Juvenile Code." From this it is clear the juvenile court reasonably exercised its discretion.

■■ Appellant also attacks the juvenile court's order because there was no explicit finding that the termination of jurisdiction was conducive to Rone's welfare and argues that the order was not supported by the evidence. This contention too, is not well taken. The ultimate purpose for allowing a

juvenile to be tried as an adult is to protect the public in cases where further treatment within the juvenile system would be unavailing. *State ex rel. Arbeiter v. Reagan,* 427 S.W.2d 371, 377 (Mo. banc 1968). Here the standards for findings (as well as those for notice and hearing) were met. There is no requirement that the juvenile court employ a particular litany when making its findings; it is necessary only that those findings permit ascertainment of the basis for the Court's decision and in this instance they are full, explicit and abundantly supported by the evidence.

It is also asserted that the absence of adequate facilities cannot support a juvenile court's decision to terminate jurisdiction.[3] Whether vel non the establishment of long term confinement centers for violent juvenile offenders might be advisable, the juvenile court has the duty to review the amenability of the juvenile to treatment resources *presently available.* While availability of juvenile court services and the likely response thereto are to be considered, they are not as movant urges, the ultimate determinative factors. As stated in *State v. Kemper,* 535 S.W.2d 241, 251–252 (Mo.App. 1976), "unfortunately juvenile courts are frequently presented with cases where the entire gamut of the facilities of that institution have been made available to a child, without beneficial results. In such a case the futility of further efforts within the juvenile system becomes an obvious factor in that court's relinquishment of jurisdiction. However, waiver is not to be conditioned upon lack of success in the juvenile process, when the court, as it

did in this case, concludes that the relevant factors, properly found and considered, lead to the conclusion that the juvenile system is not the proper forum for the handling of the particular youth involved."

We conclude that the record of the termination hearing demonstrates a careful attention to procedural standards and no abuse of the juvenile court's discretion.[4] Hence it cannot be said movant was prejudiced by appellate counsel's failure to have properly preserved the point in the criminal appeal and this aspect of the claim of ineffective assistance of counsel is denied.

Movant's next claim concerns appellate counsel's alleged failure to present certain arguments in his attempt to overturn the trial court's admission of Rone's confession in evidence. Addressing this contention it should first be noted that during trial defendant objected to the use of his confession, raising the terms of § 211.271(3), RSMo 1969, as a bar to its admission and that objection, properly preserved, was presented on appeal and considered by this Court when affirming the conviction. See *In re A.D.R.,* 515 S.W.2d 438, 440 to 444.

Movant now advances a different ground for his objection to the trial court's action, to wit: that Rone's in-custody confession was taken without notifying his parents and that this constitutes a violation of § 211.131(2)[5] rendering the confession inadmissible. This ground for objection was not suggested during trial or preserved in the motion for new trial but movant would fault appellate counsel for failing to present such ground (the § 211.131 argument) as

---

3. We need not reach movant's contention respecting the reliance upon hearsay by an expert witness when stating his opinion as to whether Rone should be tried as an adult. The expert stated he did not rely on Rone's statement nor did the court admit those statements into evidence.

4. The effect upon termination proceedings of Supreme Court Rule 118, "Dismissal to allow prosecution under general law," is not pertinent, because this rule was not placed in effect until August 1, 1976, some 5½ years after the juvenile court decision to terminate its jurisdiction as to Rone.

5. Section 211.131 provides:
   1. When any child found violating any law or ordinance or whose behavior, environment or associations are injurious to his welfare or to the welfare of others or who is without proper care, custody or support is taken into custody, the taking into custody is not considered an arrest.
   2. When a child is taken into custody, the parent, legal custodian, or guardian of the child shall be notified as soon as possible.
   3. The jurisdiction of the court attaches from the time the child is taken into custody.

plain error on appeal. Before we examine the merits of this claim [6] it seems apparent

**6.** As discussed in the first paragraph of this opinion, this postconviction proceeding is brought pursuant to *Hemphill v. State*, 566 S.W.2d 200 (Mo. banc 1978), for examination of a *single* issue; namely, effectiveness of *appellate* counsel measured against constitutional standards. Further, the standard of review for such case is that announced by this Court in *Seales v. State*, 580 S.W.2d 733, 736 (Mo. banc 1979). The dissent misses or avoids this point and (1) erroneously treats the case as though here on original appeal; (2) it again raises the point which was injected *sua sponte* by a dissent in the original criminal appeal of this cause. 515 S.W.2d 438 at 442. (The author of both dissents is the same.) (3) Compounding this error, the dissent ignores that the point (the so-called § 211.131(2) issue) was neither raised nor preserved in the trial court, and *appellate* counsel was limited and could only have urged the point as "plain error" under the standard of "manifest injustice" or "miscarriage of justice." Rule 30.20. Disregarding the rules governing such proceedings and ignoring *Seales v. State*, the dissent would examine this questionable issue for *ordinary error*.

In addition, whether § 211.131(2) was or was not followed is unclear from the record before us, primarily because the question was not raised at trial. The evidence that we do have indicates that defendant Rone exhibited special interest in retrieving his black coat which he had left in the escape vehicle. One of the investigating officers testified that Rone's parents came to police headquarters to pick up the jacket (a thing they could not have done without notice of his detention). Rone's father denied picking up the jacket. Defendant's objections for various reasons precluded development of the testimony, but for which further light might have been cast upon the matter. The dissent however erroneously states "there is a *complete absence* of any direct or positive evidence in the record of compliance [with § 211.131.2]." (Emphasis added.)

This overlooks the following significant portions of the testimony of Officer Floyd Smith, who after describing the situation at the scene of the crime, testified that the suspects, including Rone, were returned in the "paddy wagon." He stated that Rone was then in custody and the following questions and answers ensued with objections by defense counsel Dieckman, who sought first to exclude the evidence, then requested a mistrial when certain evidence on the matter was adduced.

Q. [Prosecutor] And was he [Rone] in custody at that time?

A. He was.

Q. By the way, where was that black leather jacket?

A. The leather jacket was returned to Rone's parents. They came to the police headquarters—

that counsel may well have foregone pressing such ground for objection as a tactical

MR. DIECKMAN: [Defense counsel] Your Honor, I will object to this.

(WHEREUPON, the following proceedings were had, at the bench, in the presence but OUT OF THE HEARING OF THE JURY.)

MR. DIECKMAN: [Defense counsel] Your Honor, as to who or what became of this property has no bearing on this case, strictly prejudicial to this defendant.

MR. PEAK: [Prosecutor] I was just trying to explain, Your Honor, where all these items went.

THE COURT: Do you know if this police officer was present when they came to police headquarters?

MR. PEAK: In my conference with this officer, before the trial, he stated that it was released to the parents. I don't know whether specifically this was the officer who did release it to them. I can find out, of course. I'll ask him that question before I pursue it any further, if the Court would like.

THE COURT: All right, I think the objection is well taken and—

MR. DIECKMAN: Your Honor, I don't think it can be stricken. I move for a mistrial and the jury be discharged.

MR. PEAK: On the grounds that it's prejudicial?

MR. DIECKMAN: Yes.

MR. PEAK: I don't understand on what grounds it is prejudicial.

MR. DIECKMAN: Whether or not the clothing was ever claimed has no probative value in this case at all.

THE COURT: Whether or not what, counsel?

MR. DIECKMAN: Whatever happened to his clothes or whether they claimed his coat, there is no probative value to come in here and show—

THE COURT: I am not going to rule on that comment. The Court is concerned, at this time, with the admissibility having evidence as to what happened, whether it is hearsay as far as this officer is concerned.

MR. PEAK: Yes, sir, I will ask him that question then. If it develops that it is hearsay I won't pursue it any further.

THE COURT: We will take up the matter then.

(WHEREUPON, the following proceedings were had in the presence and HEARING OF THE JURY:)

Q. (By Mr. Peak) Detective, were you present when you said the parents came down, were you present at that time?

A. I was.

Q. When they were there?

A. I was.

Q. And at any rate it was turned over to them?

A. That's correct.

choice to focus attention on the more comprehensive and viable argument that § 211.271(3) mandated the exclusion of all confessions obtained from the juvenile in custody. However, whether appellate counsel's action was the result of choice or oversight, Rone was not prejudiced thereby and this ineffective assistance of counsel contention is also without merit.

█ Admissibility of a juvenile's statement taken in the presence of the juvenile officer, *Wade v. State*, 531 S.W.2d 726 (Mo. banc 1976) is determined from the totality of the circumstances on a case by case basis.[7] *State v. Sinderson*, 455 S.W.2d 486, 493–494 (Mo. 1970); *State v. Wright*, 515 S.W.2d 421, 430–431 (Mo. banc 1974). In *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S.Ct. 2560, 2572, 61 L.Ed.2d 197 (1979), the Court stated: "The totality approach permits—indeed, it mandates—inquiry into all the circumstances surrounding the interrogation. This includes evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his fifth amendment rights, and the consequences of waiving those rights."

█ The record abundantly demonstrates the state sustained its burden of showing voluntariness. *State v. Higgins*, 592 S.W.2d 151, 158 (Mo. banc 1979), and in the totality of the circumstances we find no error in admission of the confession. Rone, a sixteen year old of above average intelligence and extensive experience with law enforcement officials, was interviewed by a

(WHEREUPON, the following proceedings were had at the bench, in the presence but OUT OF THE HEARING OF THE JURY:)
MR. DIECKMAN: Your Honor, at this time I would move that the jury be discharged, mistrial declared, for the reason this is so prejudicial to this defendant that it can't be overcome.
THE COURT: Well, let the record show the Court having considered the matter, defendant's motions for a mistrial are by the Court overruled.

7. In whatever respect *State v. White*, 494 S.W.2d 687 (Mo.App. 1973) and *In re K.W.B.*,

Kansas City police officer in the presence of but without participation by a juvenile officer. Before the interrogation, Rone was advised of his rights on three occasions. Despite his assertion the statement was elicited by trickery, Rone admitted the statement was made voluntarily, without mistreatment or coercion on the part of the interrogating officer and after being told the statement could be used against him in court. Moreover Rone previously had voluntarily admitted his participation in the robbery during the booking process prior to any interrogation. In the totality of the circumstances, it cannot be said the trial court erred in admitting the statement. Because this additional ground for objection to admission of the confession could not have prevailed (had it been raised at trial) it cannot be said the trial court's ruling constituted reversible error. *A fortiori*, no manifest injustice or miscarriage of justice resulted and we may not condemn as constitutionally ineffective, appellate counsel's failure to raise this specious additional argument as plain error. *Seales v. State*, 580 S.W.2d 733, 736 (Mo. banc 1979).[8]

It is therefore ordered that the previous mandate in this cause reissue and we affirm our opinion *In re A.D.R.*, 515 S.W.2d 438 (Mo. banc 1974).

MORGAN and HIGGINS, JJ., concur.

WELLIVER, J., concurs in part in separate opinion filed.

SEILER, J., dissents in separate dissenting opinion filed.

500 S.W.2d 275 (Mo.App. 1973), cited by movant, suggest a test for the admissibility of juvenile confessions other than "the totality of the circumstances standard" reenunciated herein, those cases are not to be followed.

8. For the same reasons it is apparent (though not an issue here) that the failure of Rone's *trial* counsel to object to the admission of Rone's confession for the reason that § 211.131, RSMo 1969 might have been violated, did not constitute ineffective assistance of trial counsel.

BARDGETT, C. J., dissents and concurs in dissenting opinion of SEILER, J.

DONNELLY, J., dissents.

WELLIVER, Judge, concurring in part.

I concur, with the exception that I do not believe the issue of the admissibility of appellant's statements under § 211.131(2), RSMo 1969, was either preserved as error or properly raised for consideration in this post-conviction proceeding and need not have been reached or discussed in this cause.

SEILER, Judge, dissenting.

Although the principal opinion opens by announcing its scope is limited to consideration of the single issue of ineffectiveness of appellate counsel and adopts as the standard for evaluation of appellate counsel's actions the same standard as used for gauging trial counsel's conduct, the principal opinion then proceeds to deal with both claims made—i. e., the claim that the juvenile court improperly relinquished jurisdiction and the claim that Rone's in-custody confession was taken without his parents having been notified as soon as possible that he was in custody as required by section 211.131.2—on their merits, examining each no differently than would be done on an original appeal. The principal opinion decides that there is no merit to the first claim for various reasons set forth in pages 579–582, concluding that the trial court reasonably exercised its discretion, considering Rone's previous difficulties, the lack of success in rehabilitation attempts, his dangerous proclivities; that the trial court's findings were adequate; that the court was correct in determining that the juvenile system was not a proper forum for Rone. Therefore, holds the principal opinion, the juvenile court acted properly in terminating its jurisdiction and "[t]hus no prejudice flowed" from counsel's failure to preserve this issue, thereby effectively mooting the ineffectiveness assistance of counsel issue. No matter how astute on one hand or inept on the other counsel was, it made no difference because the juvenile court was correct all along in terminating jurisdiction and this would be the outcome even had counsel preserved the point. I have no objection to the result reached, but call attention to the fact that this decision is based on a consideration of the merits of the underlying claim. Nowhere does the principal opinion gauge the quality of counsel's work. Ineffective assistance of counsel has nothing to do with the decision reached. Instead the principal opinion decides there is no validity to the point even had it been raised by counsel.

The same is true of the disposition of the underlying claim that the confession was inadmissible because of violation of section 211.131.2 in not notifying Rone's parents as soon as possible that he was in custody and obtaining his confession in the meantime. This claim, too, is examined on the merits, page 584, just as would have been done on original appeal, and it is decided that the confession is admissible, under "the totality of circumstances", with the violation of the statute, if it occurred, being merely one of the circumstances to be weighed against voluntariness, Miranda warnings, the experience of the juvenile, etc. The decision is reached on an admissibility of evidence ground. Again, the ineffective assistance of counsel aspect is effectively mooted. Failure to raise this "specious" section 211.131.2 argument, under the principal opinion, is meaningless, because whether counsel was effective or ineffective, the objection, had it been made, would not have prevailed.

It is the disposition of this second issue—the effect of violation of section 211.131.2 and the adoption of a new rule for determining the admissibility of a juvenile's confession—"the totality of the circumstances", which makes violations of the juvenile code just another circumstance to be considered, to which I respectfully dissent with whatever full vigor I possess. In doing so I must necessarily deal with the subject not in terms of ineffective assistance of counsel, or whether the point is raised sua sponte or was properly preserved or is a matter of plain error, but on the merits as does the

principal opinion. Rather than this dissent missing the point as the principal opinion would have it, far from it—the dissent is responding directly to the disposition which the principal opinion makes of the section 211.131.2 issue—that the evidentiary issue of admissibility of juvenile confessions is henceforth to be determined on the totality of the circumstances, regardless of violations of the juvenile code, contrary to all prior Missouri law on the subject.

In the original *Rone* decision, reported in *In re A.D.R.*, 515 S.W.2d 438 (Mo. banc 1974), the court divided on whether or not the authorities, in obtaining defendant's confession, had abided by the provisions of the juvenile code. Among the violations of the juvenile code, as pointed out in the dissent, 515 S.W.2d at 444, was the failure of either police or juvenile authorities to get in touch with defendant's parents or relatives or to have them present at the questioning, despite the provisions of § 211.-131.2 "[that] when a child is taken into custody, the parent[s], legal custodian or guardian of the child [are to] be notified as soon as possible." This subject was ·not addressed in the majority opinion.

It is now, for the first time, addressed in the principal opinion herein and held to be without merit on the ground that even if the statute were violated Rone was not prejudiced thereby, because the confession was voluntary and in the totality of the circumstances the trial court did not err in admitting it into evidence. This, however, does not necessarily follow.

Section 211.131.2 is forthright and unequivocal. It provides: "When a child is taken into custody, the parent, legal custodian or guardian of the child shall be notified as soon as possible." The requirement of prompt notice does not depend on whether it is convenient for the police to comply, or whether the juvenile would prefer that his parents not know he is in jail. The statute requires that the parents be noti-

fied; whether they do anything about it is up to them, but the law envisions that they are to be informed, promptly, that their child is in custody. As we will see, this is an important protection which the juvenile code provides for the child.

Although the principal opinion asserts it is unclear whether section 211.131.2 was in fact violated, there is a complete absence of any direct or positive evidence in the record of compliance (a fact which the state could have proven without difficulty had the authorities in fact notified the parents promptly). On the other hand, there is persuasive evidence that the parents were not given prompt notice. It is noteworthy that the state makes no contention that the parents were notified promptly. It would have been easy for prompt notification to have been given defendant's parents that he was in custody. Upon arrest, defendant was taken to the Kansas City, 27th Street police station. His parents, who had been married 31 years, lived at 3223 Agnes, Kansas City, in a large house with four of their eight children still at home. Mr. Rone was a long time employee of the post office. As the principal opinion indicates, and as the record sets forth in considerable detail, both the police and the juvenile officers had had several prior contacts with Rone and his parents. It is safe to say the authorities knew how to get in touch with Rone's parents.

The principal opinion intimates that since Rone had said he would like to have his coat back (which remark the principal opinion characterizes as an exhibition of special interest in the coat on Rone's part) and since one of the police officers testified Rone's parents came to police headquarters to pick up Rone's black coat,[1] it follows the parents were notified, as picking up the coat was "a thing they could not have done without notice of his detention."

The difficulty with this argument is that the statute requires notice to the parents

---

1. The writer is unable to find where further questioning on this point was prevented by defendant's objections. As shown by the excerpt of testimony in footnote 6 of the principal opinion, despite defendant's objections the court permitted the officer to testify about turning over the coat to Rone's parents and the state asked no further questions on the subject.

"as soon as possible." The fact, if so, that the parents picked up the coat at some unspecified time,[2] is no proof that the parents were notified promptly that their son was in custody, as required by the statute, nor does it shed any light on whether the parents, if they were notified, were given notice before or after the police already had obtained Rone's incriminating statement.

The authorities would be in the best position to prove that they gave prompt notice to the parents, if so, by producing the person who claimed to have given notice. This they did not do. The best the state could do was the testimony of the police officer, who testified that he was present when the coat was turned over to defendant's parents at a date and time not stated. We do not know how long this was after the arrest or the confession or whether it was even on the same day.

While the statute does not require the presence of the parents during police interrogation of the juvenile, by the requirement that the parents be notified as soon as possible that their child is in custody, the statute does give the parents an opportunity to be present in person. Here, however, it is undisputed that the juvenile's parents were not with him during the interrogation, an unlikely state of affairs with parents as deeply involved in juvenile court efforts with their son as the record shows these parents were, had they been given prompt notice that their son was in custody. Officer Merle Hoffman started interrogating defendant at 1:35 a. m., some four hours after defendant was taken into custody. The robbery occurred around 9:00 p. m. and defendant was apprehended by the police within a few minutes thereafter. Officer Hoffman is the one who obtained defendant's confession. As to who was present, Hoffman testified it was deputy juvenile officer Charles Gardner:

"Q. On that day did you have occasion to speak with Arthur Daniel Rone, Jr.?

"A. Yes, I did.

"Q. Where did you first speak to him?

"A. In the Crimes Against Persons Unit at police headquarters.

"Q. And who else was present at the time you talked to him?

"A. Deputy Juvenile Officer Charles Gardner.

"Q. What was your purpose in talking to him?

"A. In regards to the robbery . . ."

The principal opinion, in dismissing violation of the juvenile code by the police, if it did occur, as of no consequence in the totality of the circumstances with respect to admission of the confession, overlooks our long established rule that the police must observe the juvenile code requirements before they can use a confession obtained from a juvenile.

In *State v. Wade*, 531 S.W.2d 726 (Mo. banc 1976), this court held that it was reversible error for a trial court to admit a police officer's testimony concerning a juvenile's oral confession when the juvenile offender has not been taken directly to the juvenile authorities as required by § 211.-061.1, RSMo 1969. In that case, as in the case at bar, the juvenile offender was taken directly to a police station, where the incriminating statements were subsequently made. The *Wade* opinion spent no time in discussing the "totality of the circumstances" or whether the confession was "voluntary". It went directly to the point of whether the police abided by the juvenile code and said:

"The Juvenile Code intends that no statement shall be made to police by a person under seventeen years of age before the child is taken to juvenile authorities. To hold the statement admissible here would permit the State to obtain and use what the Code refuses."

531 S.W.2d at 729. Also in *Wade*, we stated that "the Juvenile Code recognizes the *incapacities* of persons under seventeen years of age." *Ibid.* at 728 (emphasis in original).

---

2. Rone's father denied that he had picked up any jacket. An effort by the defense to show that the same was true of the mother was cut off by the state's objection.

Just last year, the author of the principal opinion noted "*Wade* holds that it is reversible error to admit testimony regarding a confession of a juvenile offender made prior to being taken to the juvenile authorities." *State v. Moore*, 580 S.W.2d 747, 750 (Mo. banc 1979). To the same effect is *State v. Arbeiter*, 408 S.W.2d 26 (Mo.1966), where the court dealt with admissibility of statements obtained from a juvenile by police interrogation in disregard of the juvenile code. *Wade* and *Arbeiter* are still good law and their principles control the question of the admissibility of the confession in this case.

While this case presents the same violation of the juvenile code in the failure to take the child directly to the juvenile authorities as required by § 211.061.1 as in *Wade* and *Arbeiter*, there is present in addition a further serious violation in the failure, as I contend, of the police to notify the child's parents that the child had been taken into custody as required by § 211.131.2, despite the fact, as pointed out earlier, that the arrest was made shortly after 9:00 p. m. and the interrogation did not start until 1:35 a. m.[3] This is where the prejudice to the defendant occurs. As the result of the failure of the police to abide by the juvenile code, there was a police interrogation of a 16 year old boy, in the middle of the night, conducted by a veteran police officer (17 years on the force), where incriminating statements were obtained from the juvenile, without having first given his parents prompt notice that he was in custody and thereby eliminating any possibility of the presence of a parent or adult friend who could have aided the child by protecting him from vulnerability to undue influences and impulsive waivers due to his immaturity. It was not an even match and it was decidedly to defendant's prejudice.

As pointed out in *People v. Maes*, 571 P.2d 305, 306 (Colo.1977), involving a statute similar to our section 211.131.2, and relying on Missouri authority (which, incidentally, the principal opinion would expressly overrule):

"A parent, guardian, legal custodian, or an attorney is expected to act 'on the side' of the juvenile, and to have his best interest uppermost in mind when called upon to be with a juvenile who is in police custody for alleged criminal activity. If the person appearing with a juvenile in the situation involved here is neutral or hostile, the juvenile is deprived of the protection afforded by the statute. *See In re K. W. B.*, 500 S.W.2d 275 (Mo.App. 1973); *State v. White*, 494 S.W.2d 687 (Mo.App.1973)."

Likewise in *State v. Tolliver*, 561 S.W.2d 407, 409 (Mo.App.1978) where the court was considering the effect of the juvenile officers failing to take enough time with the juvenile to determine that he had not lived with his mother since he was six months old, but instead lived with his grandmother (the juvenile officers tried to call the mother to come to the police station, unsuccessfully, but of course made no effort to call the grandmother), the court pointed out the following with respect to police interrogation of juveniles: "[T]he law required special protection to a young teenager who is to be subjected to police interrogation, so as to place him so far as possible on a plane of equivalence with an adult. A key measure of such protection has been the creation of a procedure to provide the presence of an attorney, parent or similar adult friend . . . ."

Section 211.131.2 provides the necessary procedure, if it is followed. We should not permit it to be ignored.

The principal opinion as revised cites *State v. Wade, supra*, for the proposition that the admissibility of a juvenile's statement taken in the presence of the juvenile officer, is "determined from the totality of the circumstances on a case by case basis." No such statement or inference appears in the *Wade* opinion and the holding and effect of the *Wade* case is the exact opposite.

---

**3.** The statement or confession under examination, therefore, involves no question of a confession or incriminating statement made at the scene of the crime or within a few minutes of arrest, before there is any opportunity to notify the parents.

In *Wade*, even though the confession was voluntary, without coercion, and made after defendant was advised of his constitutional rights, the confession was, on appeal, held inadmissible, and the case was reversed and remanded. The reversal was on the express ground that in obtaining the confession, the police had failed to comply with the juvenile code provision that the juvenile be taken "immediately and directly" to the juvenile authorities as required by section 211.-061(1). The *Wade* opinion at no point addresses "the totality of the circumstances."

The principal opinion would treat *State v. Wade* as though it adopts a per se rule that the presence of a juvenile officer at police interrogation suffices to cure any juvenile code violation, so long as the confession is "voluntary." No doubt Rone's statements were "voluntary" for purposes of the Fifth Amendment. But our juvenile code serves interests and policies distinct from those against compulsory self-incrimination. As said in *Wade*.

"The idea that an attempt should be made to *rehabilitate* offenders under seventeen years of age, rather than merely *punish* them, is settled public policy, declared by statute and case law in Missouri. 'The purpose of the Juvenile Law is not to convict minors of criminal acts, but to safeguard and reform children that may have erred * * *.' *State ex rel. Shartel v. Trimble*, 333 Mo. 888, 63 S.W.2d 37, 38 (1933). The idea of rehabilitation was conceived, rightly or wrongly, as a procedure for dealing with juvenile offenders which would be of maximum benefit to society."

A similar argument about "voluntariness" and "totality of the circumstances" curing previous violations by the police in obtaining a confession was made in *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). There defendant was convicted in the New York courts of felony murder and attempted robbery. He had been arrested without probable cause, taken to the police station, and there detained for interrogation, during which he made statements and drew a sketch which incriminated him.

It was conceded by defendant that the proper *Miranda* warnings were given and that his statements were "voluntary" for purposes of the Fifth Amendment. Nevertheless, the Supreme Court held the statements and sketch were inadmissible, because satisfying voluntariness for the Fifth Amendment did not mean that the confession should not be excluded under the Fourth Amendment by reason of the admitted lack of probable cause for the arrest. The court spoke of the "lingering confusion" between "voluntariness" for Fifth Amendment purposes and the "causal connection" between the illegal arrest and the confession established in *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). In the present case, the principal opinion mixes "voluntariness" so far as satisfying Fifth and Fourteenth Amendment constitutional rights is concerned with what it takes to satisfy the requirements of the juvenile code, where these requirements have been ignored, as I contend was done here. To borrow the thought from the language of the Supreme Court in *Dunaway*, to admit Rone's confession would allow the police to violate the juvenile code with impunity, "safe in the knowledge that they could wash their hands in the 'procedural safeguards' of the Fifth" [Amendment]. *Id.* at 219, 99 S.Ct. at 2260.

The case of *In re K. W. B.*, 500 S.W.2d 275 (Mo.App.1973) presents a markedly similar set of facts and issues to the case at bar. There, as here, the juvenile was arrested for armed robbery, taken directly to police headquarters, and subjected to custodial interrogation in the absence of a parent or friendly adult. The court of appeals held that, under the legislature's framework in the juvenile code, "in the absence of an attorney, a confession of a child shall not be used against him in a juvenile court proceeding unless both he and his parent, guardian or adult friend were informed of the juvenile's rights to an attorney and to remain silent." 500 S.W.2d at 283.

Likewise, in *State v. White*, 494 S.W.2d 687 (Mo.App.1973), a video taped statement

taken by the police from a 15 year old child was held inadmissible. The questioning was done by an experienced police officer, without the knowledge or presence of either the juvenile's mother, attorney or any other supportive adult. The court declared that even under "the totality of circumstance" rule, ". . . where a lawyer or his mother or friend could have given the defendant the protection which his own immaturity could not, we hold that without some adult protection against this inequality, even when advised he cannot make the kind of judgment to intelligently, knowingly, and understandingly waive his constitutional rights."

*In re K. W. B.* and *White* are proper applications of the juvenile code, wholly consistent with our recognition of the incapacity of juveniles under the code in *Wade* and *Arbeiter.*

The principal opinion misinterprets the case of *State v. Sinderson,* 455 S.W.2d 486 (Mo.1970), as holding that the "totality of circumstances" is the sole standard for determining admissibility of a juvenile's confession, when, in fact, the "totality of circumstances" discussion in *Sinderson* cited at 455 S.W.2d 493–94 goes to defendant's constitutional claims under the Fifth, Sixth and Fourteenth Amendments. This came *after* the court had determined that there had been no violations of the juvenile code, 455 S.W.2d 491–93. *Sinderson* does not remove the safeguards afforded by the legislature to Missouri juveniles under the juvenile code. In *Sinderson,* the child was taken to the authorities by his mother and uncle and was questioned with his mother and uncle present, a situation far different from the present case. The child, his mother, and his uncle were read his rights and asked if they had any questions. The child and his mother indicated that they understood his rights and did not want an attorney. The child then signed a form listing and waiving his rights to remain silent, to consult an attorney, to have an attorney appointed for him, to have a lawyer present at the questioning, and to stop answering questions at any time. His mother and uncle signed the waiver form as witnesses.

After questioning, the child's statement was reduced to writing and the statement was corrected by the child, his mother and uncle. The child signed the corrected statement, which his mother signed as a witness. The *Sinderson* case only proceeds to evaluate the voluntariness of the confession under the "totality of circumstances" standard after establishing that the juvenile code provisions were followed. His mother had notice of and participated in the questioning of the child. The questioning in *Sinderson* was not done in the early morning hours with no relative or supporting friend present. With the juvenile code's statutory requirements having been followed, the court could then reach the issue of admissibility of the confession under the federal constitutional standards.

The *Sinderson* case did not hold that a juvenile's confession is to be judged only under the "totality of circumstances" and without reference to the juvenile code. *Sinderson* does not require nor imply that we overlook the violations of the juvenile code and judge the child's confession under the "totality of circumstances." The *Sinderson* decision is inapplicable to this case.

In *Fare v. Michael C.,* 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979), which the principal opinion cites for the "totality" approach, the question before the court was whether the juvenile's asking to have his probation officer present during police questioning was equivalent, with respect to involving the *Miranda* rule, to a request for the assistance of an attorney. The California Supreme Court ruled that it was and excluded the subsequent confession. The United States Supreme Court held it was not and reversed the California court. The case does not deal in any way with what is required by a particular juvenile code before the police can interrogate. The quotation at 442 U.S. 725, 99 S.Ct. 2572, set forth in the principal opinion herein relates to what is required to determine whether there has been a waiver by the juvenile of his Fifth Amendment rights. There is nothing in the opinion which holds or intimates that such a waiver also operates to

override specific requirements made by a particular juvenile code. That question was not before the court and would have been a matter of state, not federal, jurisprudence in any event.

*State v. Higgins,* 592 S.W.2d 151 (Mo. banc 1979), also cited by the principal opinion, while discussing the basis for "voluntariness" of a confession, does not involve a juvenile confession or the requirements of the juvenile code in any way.

In *State v. Wright,* 515 S.W.2d 421 (Mo. banc 1974), also relied on by the principal opinion, the court addressed the question of whether defendant's confession should have been excluded on the basis that its use other than in juvenile court proceedings was prohibited under § 211.271(3), as amended in 1969. The court held that the statute did not establish an absolute prohibition against use of every statement obtained from the juvenile while subject to juvenile court jurisdiction, that the confession was not made to the juvenile officer within the contemplation of the statute, that it was instead made to the police in the presence of the juvenile officer after the juvenile had been warned as to his rights, and was admissible. The decision does not hold that the totality of the circumstances test or voluntariness test makes a juvenile confession admissible regardless of whether the juvenile code has been observed. On the contrary, it recognized that had the confession been made to the juvenile officer it would not have been admissible. *Id.* at 429–30.

Our opinions have, without articulating it in so many words, developed a two-step process for determining the admissibility of confessions obtained by the police from juveniles: First, did the police or the juvenile authorities respect the rights of the juvenile under the juvenile code? Second, if they did, then were the juvenile's constitutional rights observed? If the answer to the first question is in the negative the second is not reached.[4] But the principal opinion deals with the second question without answering the first. In so doing, the opinion strips away the safeguards provided by the legislature to supplement the minimum federal constitutional protections. The opinion overlooks "the need for protection and special treatment foreseen and mandated by the General Assembly" which we noted and applied in *Wade.* 531 S.W.2d at 729. It requires no more protection for a juvenile than that afforded an adult. It ignores the legislative determination that juveniles are to be treated differently than adults. Whether we agree or not, the legislature has required that suspected juveniles be treated differently than adults accused of crime.

The admission of the juvenile's incriminating statements made while in police custody and without his parents having been promptly notified would be reversible error under the provisions of the juvenile code and the rationale of the *Dunaway, Wade, Arbeiter, Tolliver, In re K. W. B.,* and *White* decisions.

For these reasons, I would reverse and remand for a new trial.

One other matter must be mentioned: there is a difference of opinion between the principal opinion and this dissent as to whether, on the basis of the record before us, there was a violation of section 211.131.2 in failing to notify Rone's parents as soon as possible that their son was in custody. As earlier stated, in my view there is persuasive evidence they were not. The principal opinion does not contradict this. The strongest claim it advances is that "whether section 211.131.2 was or was not followed is unclear from the record before us . . ."

4.  Other state courts have developed a similar handling of the problem, holding that failure of the state to show compliance with the safeguards established by the juvenile code makes the confession inadmissible without reaching the constitutional question of admissibility. *See: In Interest of D. S.,* 263 N.W.2d 114 (N.D.1978); *People v. Maes,* 571 P.2d 305 (Colo.1977); *State v. Doe,* 91 N.M. 92, 570 P.2d 923 (Ct.App.1977); *J. T. P. v. State,* 544 P.2d 1270 (Okl.Cr.App.1975); *State v. Strickland,* 532 S.W.2d 912 (Tenn.1975); *Lovell v. State,* 525 S.W.2d 511 (Tex.Cr.App.1975); *In re F. G.,* 511 S.W.2d 370 (Tex.Civ.App.1974); *In re D.,* 30 A.D.2d 183, 290 N.Y.S.2d 935 (1968).

If the evidence on this critical point is at best unclear, then we should not decide the point until the record is clear one way or the other. Passing on points under an admittedly unclear record is a denial of fundamental due process and puts the court in the position of willingness to make a decision on an inadequate record. If the cause is not reversed and remanded for a new trial, then I would urge that we remand the cause to the trial court for a hearing, after due notice to the parties and with opportunity to present evidence, with the burden of proof being on the state to show compliance with the statute, with instructions to the trial court to make specific findings as to whether or not notice was given to Rone's parents that their son was in custody, and if so, when. The trial court should then certify to us the transcript of the hearing together with its findings and conclusions. If the statute is found to have been violated, then we can consider the case accordingly. If not violated, then the matter drops out of the case. A procedure of this sort is one we have used on numerous occasions. *See State v. Bridges*, 491 S.W.2d 543 (Mo.1973); *State v. Ussery*, 452 S.W.2d 146 (Mo.1970); *State v. Taggert*, 443 S.W.2d 168 (Mo.1969); *State v. Edwards*, 435 S.W.2d 1 (Mo.1968); *State v. Auger*, 434 S.W.2d 1 (Mo.1968); *State v. Devoe*, 430 S.W.2d 164 (Mo.1968); *State v. Glenn*, 429 S.W.2d 225 (Mo. banc 1968); *see also State. v. Sales*, 558 S.W.2d 302 (Mo.App.1977).

Another alternative would be to decide only the first question before us—the claim that the juvenile court improperly relinquished jurisdiction—and dismiss the second claim—the claim that the confession was taken without his parents having been notified as soon as possible that he was in custody—without prejudice to the right of defendant to file a Rule 27.26 proceeding on that issue. That would permit a factual hearing on whether the parents were notified as soon as possible and if not whether Rone was prejudiced thereby and, if so, whether the failure of his lawyer to raise the point constituted ineffective assistance of counsel. By doing this we would not be in the position of deciding the case against defendant without knowing what the facts are.